UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BARRON PARTNERS, LP,

                       Plaintiff,

-against-

LAB123, INC., HENRY A. WARNER, FRED
FITZSIMMONS, KENT B. CONNALLY, KURT
KATZ, ROBERT TRUMPY, JEREMY J. WARNER,
DAVID FLEISNER, BIOSAFE LABORATORIES,
INC. and BIOSAFE MEDICAL TECHNOLOGIES,
INC.,

                       Defendants.

------------------------------------------------------------X

Docket No.: 07-CV-11135 (JSR)

DECLARATION OF
HENRY WARNER

I, HENRY A. WARNER, declare under penalty of perjury as follows:

1. I am over the age of 18, have personal knowledge of the facts alleged in this declaration and have reviewed the exhibits attached to Defendants' Motion to Dismiss.

2. I am the Chairman and CEO of Biosafe Medical Technologies, Inc. ("BMT") and Chairman of its subsidiary, Biosafe Laboratories, Inc. ("Biosafe Labs")(collectively "Biosafe"). I am also a Director of Lab123, Inc. ("Lab123").

3. Biosafe has been managed as a privately owned company since 1995. Prior to the creation of Lab123, I had no experience in the creation, management or operation of a public company.

Exhibit A

4. Indeed, I informed Barron Partners LP's ("Barron") Chairman and CEO, Andrew Worden, that I had no prior experience in these areas. He assured me that Barron was an expert at taking companies public and in fact, he introduced me to the law firm of Guzov Ofsink, which represented Lab123 in the transaction with Barron, and to Marcum & Kliegman LLP, the auditors who reviewed Lab123's financial statements. *See* Ex. 23.

5. Biosafe manufactures and sells a variety of medical testing products, including home blood-collection and testing kits. Historically, Biosafe's principal customers consisted of large pharmaceutical companies and medical clinics, with minimal sales to the retail market.

6. I was personally involved in the negotiation of the Stock Purchase Agreement between Barron and Lab123 as well as the subsequent filing of Lab123's registration statement on Form SB-2 and the amendments thereto.

7. On May 10, 2006, Leonardo Zangani introduced me to Mr. Worden by carbon copying me on his e-mail to Mr. Worden providing Mr. Worden with my contact information and a link to Biosafe's website. *See* Ex. 2. Shortly thereafter, Mr. Worden called me and we engaged in an introductory telephone conference.

8. Mr. Worden and I exchanged preliminary e-mails regarding information on our respective companies. During our preliminary e-mail exchange, I proposed to facilitate the deal by transferring the licenses for Biosafe's home testing products and existing contracts to a newly formed entity. *See* Exs. 6 and 7.

9. In our preliminary e-mail exchange, Mr. Worden referred me to Barron's website at http://www.barronpartners.com, which contained information on Barron's investment structure and strategy for investment in private companies, Barron's expertise, Barron's

2

ability to perform due diligence in a compressed timeframe, and biographies of Barron's officers and employees. *See* Ex. 1.

10. In fact, Marc Jensen, a former principal of Barron, sent me an e-mail stressing Barron's purported efficient and expedited due diligence process. *See* Ex. 3.

11. Mr. Worden repeatedly touted his expertise in taking companies public, however, was routinely unavailable during the process. *See* Exs. 8 and 9.

12. Shortly after our preliminary e-mail exchange, on June 2, 2006, Matthew Samuel, Barron's junior analyst forwarded Barron's Letter of Intent ("LOI") which broadly outlined the proposed terms of the deal. *See* Exs. 10 and 11.

13. By e-mail dated June 5, 2007 to Mr. Samuel, I questioned Barron's assumptions regarding EBIDTA contained in the LOI *See* Ex. 12.

14. Mr. Samuel responded to me by e-mail the same day attaching Barron's Intrinsic Value calculations. *See* Ex. 13.

15. On June 5, 2006 Mr. Samuel also sent me an e-mail stating that Barron was "very firm on price." *See* Ex. 14.

16. Mr. Trumpy, Biosafe's CFO, sent an e-mail to Mr. Samuel attaching a revised LOI on June 8, 2006, and sent another e-mail to Mr. Samuel attaching a second revised LOI on June 12, 2006. *See* Exs. 15 and 16.

17. The LOI was executed on June 13, 2006. *See* Ex. 17.

18. On June 13, 2006, Mr. Samuel sent an e-mail to Mr. Trumpy attaching Barron's standard due diligence package ("Form MDR") for completion, and requested additional financial information on the products that were planned to be spun into Lab123. *See* Ex. 18.

33. On January 26, 2007 I received an e-mail from Mr. Worden proposing that Biosafe reverse merge into Lab123, making Biosafe a public company and giving Barron an ownership interest in both Lab123 and Biosafe. *See* Ex. 42. We could not come to an agreement on Mr. Worden's proposal.

34. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lake Forest, Illinois
April 30, 2008

*[signature]*
HENRY A. WARNER

ND: 4821-6267-3154, v. 2

6