10QSB 1 lab123_10qsb-093007.htm QUARTERLY REPORT

U.S. SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, DC 20549

FORM 10-QSB

(Mark One)

[X]   QUARTERLY REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended September 30, 2007

or

[ ]   TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE EXCHANGE ACT OF 1934
For the transition period from _____ to _____

Commission file number 333-137545

Lab 123, Inc.
(Exact Name of Small Business Issuer as Specified in its Charter)

| Delaware | 45-0542515 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

100 Field Drive, Suite 240, Lake Forest, Illinois 60045
(Address of principal executive offices)

847-234-8111
(Issuer's Telephone Number)

Not Applicable
(Former Name, Former Address and Former Fiscal Year, if Changed Since Last Report)

Check whether the issuer: (1) filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the past 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X]   No [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act.) Yes [ ]   No [X]

The Company had 6,175,000 shares of common stock, $0.001 par value, issued and outstanding as of January 17, 2008.

TRANSITIONAL SMALL BUSINESS DISCLOSURE FORMAT (CHECK ONE):
Yes [ ] No [X]

**NOTE 5 - Due to Biosafe and Related Party Transactions**

Biosafe and its affiliates is an affiliated company whose Chairman is the former Chairman of the Company. BioSafe is a shareholder and owns approximately 98% of the Company's outstanding common stock and is the licensor of the Company's license agreement. Biosafe's products specialize in the use of micro-sample blood transportation devices and unique, scientific procedures for the clinical testing of these micro-blood samples. From time to time the Company may obtain terms that are beneficial to the Company that the Company may not normally obtain if the Company would seek the same terms from an outside vendor.

BioSafe provides office space, administrative and financial services for a monthly fee of approximately $15,000, for the three and nine months ended September 30, 2007 the Company incurred a charge of $45,000 and $135,000 respectively.

As of September 30, 2007, the Company has a deposit outstanding to BioSafe of $300,444, for the purchase of approximately $600,000 of inventory. The Company plans the receipt of this inventory by the end of 2007 or as required by the Company to meet customer and inventory needs.

The Company entered into a website lease agreement with a company whose owner is also the son of the former Chairman of the Company. The lease calls for monthly lease payments of $5,000 with an option to purchase the website for an incremental $50,000 at any time before the license expires at December 31, 2007.

**NOTE 6- Inventory, Net**

Inventory consisted of $86,198 primarily of finished goods on consignment.

**NOTE 7 – Legal Proceedings**

On December 10, 2007, Barron filed a Complaint in the United States District Court for the Sothern District of New York against the Company, certain present and former directors and consultants to the Company and certain other persons, including Biosafe Laboratories, Inc. and Biosafe Medical Technologies, Inc. to recover unquantified damages against the defendants for alleged violations by the defendants of the Securities Exchange Act of 1934, the Illinois Securities Act and various other statutes and common law in connection with the Barron Private Placement (see Note 4). The alleged violations were based upon, among other things, alleged intentional and negligent misrepresentations made by the Company in the Preferred Stock Purchase Agreement dated September 6, 2006 and alleged breaches of such agreement by the Company.

Prior to and subsequent to the filing of the complaint the Company is in negotiations with Barron for the repurchase by the Company of the securities sold to Barron. The Company believes it has an oral understanding with Barron to settle all of Barron's claims by repurchasing all of the Preferred Stock and Warrants for $2 million in cash. The oral understanding is not binding and is subject to the execution of a definitive settlement agreement between Barron and the Company. As of January 17, 2008 the Company did not have a commitment from any person to finance the $2 million purchase price required to be paid under the proposed settlement agreement. No assurance can be provided that a definitive settlement will be entered into and consummated by the parties.

The Company may be involved in routine litigation incidental to the normal course of business. While it is not feasible to predict or determine the final outcome of these claims, the Company believes the resolution will not have a material adverse effect on its financial position, results of operations or liquidity.

**NOTE 8 – Concentrations and Credit Risk**

During the period from January 1, 2007 to September 30, 2007 revenues of two customers accounted for approximately $168,000 of gross revenue (representing approximately 42% and 10%, respectively, of gross revenue). At September 30,