30

## Report of Independent Registered Public Accounting Firm

To the Board of Directors
LAB123, INC.

We have audited the accompanying balance sheet of LAB123, INC. (A Development Stage Company) (the *"Company"*) as of August 31, 2006 and the related statement of operations, changes in stockholder's deficiency and cash flows for the period from August 25, 2006 (Date of Inception) to August 31, 2006. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of LAB123, INC. (A Development Stage Company) as of August 31, 2006, and the results of its operations and its cash flows for the period from August 25, 2006 (Date of Inception) to August 31, 2006 in conformity with accounting principles generally accepted in the United States of America.

The accompanying financial statements have been prepared assuming the Company will continue as a going concern. As discussed in Note 2 to the financial statements, the Company has incurred a loss since inception and has a working capital deficiency as of August 31, 2006. These conditions raise substantial doubt about its ability to continue as a going concern. Management's plans regarding those matters are also described in Note 2. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.

/s/ Marcum & Kliegman LLP

New York, New York
September 21, 2006

F-1

Lab123, Inc.
(A Development Stage Company)
Balance Sheet
August 31, 2006

| | |
|---|---:|
| TOTAL ASSETS | $ - |
| | |
| Accrued expenses | 5,628 |
| Due to BioSafe | 18,619 |
| Total Current Liabilities | 24,247 |
| | |
| TOTAL LIABILITIES | 24,247 |
| | |
| Stockholder's Deficiency | |
| Series A Convertible Preferred Stock - .001 par value; 6,000,000 authorized; none issued and outstanding | - |
| Common Stock - .001 par value; 15,000,000 authorized; 1,500,000 issued and outstanding | 1500 |
| Additional paid-in capital | 538,500 |
| Deficiency accumulated during the development stage | (132,247) |
| Deferred compensation | (432,000) |
| Total Stockholder's Deficiency | (24,247) |
| | |
| TOTAL LIABILITIES AND STOCKHOLDER'S DEFICIENCY | $ - |

*The accompanying notes are an integral part of these financial statements.*

F-2

Lab123, Inc.
(A Development Stage Company)
For the period from August 25, 2006 (Date of Inception)
to August 31, 2006
Statement of Operations

OPERATING EXPENSES:

| | |
|---|---:|
| Compensation | $ 108,000 |
| Formation and legal expenses | 24,247 |
| Total Operating Expenses | 132,247 |
| NET LOSS | $ (132,247) |
| Basic and diluted loss per common share | $ (0.31) |
| Weighted average common shares, basic and diluted | 428,571 |

*The accompanying notes are an integral part of these financial statements.*

F-3

Lab123, Inc.
(A Development Stage Company)
Statement of Changes in Stockholder's Deficiency
For the period from August 25, 2006 (Date of Inception)
to August 31, 2006

| | Common Stock Shares | Amount | Additional Paid - in Capital | Deficiency Accumulated During the Development Stage | Deferred Compensation | Total Stockholder's Deficiency |
|---|---|---|---|---|---|---|
| Issuance of shares under employment agreement (August 30, 2006, $0.36) | 1,500,000 | $ 1500 | $ 538,500 | | $ (432,000) | $ 108,000 |
| Net loss | | | | (132,247) | | (132,247) |
| Balance at August 31, 2006 | 1,500,000 | $ 1500 | $ 538,500 | $ (132,247) | $ (432,000) | $ (24,247) |

*The accompanying notes are an integral part of these financial statements.*

F-4

Lab123, Inc.
(A Development Stage Company)
Statement of Cash Flows
For the period from August 25, 2006 (Date of Inception)
to August 31, 2006

| | |
|---|---:|
| Cash Flows From Operating Activities | |
| Net Loss | $ (132,247) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
|   Non-cash stock based compensation | 108,000 |
|   Changes in operating liabilities: | |
|     Due to BioSafe | 18,619 |
|     Accrued expenses | 5,628 |
| Net cash used in operating activities | - |
| Change in Cash | - |
| Cash - Beginning of the Period | - |
| Cash - End of the Period | $ - |

*The accompanying notes are an integral part of these financial statements.*

F-5

Lab123, Inc.
(A Development Stage Company)
NOTES TO FINANCIAL STATEMENTS

**NOTE 1 - Organization, Business and Operations**

Lab123, Inc. (a development stage company) ("Lab123" or the "Company") is currently a development stage company under the provisions of Statement of Financial Accounting Standards ("SFAS") No. 7, Development Stage Enterprises and was incorporated in Delaware on August 25, 2006. Lab123 is a marketing, distributing and manufacturing company whose objective is to license, broker or acquire retail medical diagnostic products and services to sell into retail drug stores and chains the United States and internet drug retailers. As of August 31, 2006, the Company has not commenced operations and will continue to report as development stage company until significant revenues are generated.

All activity through August 31, 2006 relates to the Company's formation and the progress towards the completion of the private placement described below. The Company has selected December 31 as its fiscal year-end.

On September 6, 2006 the Company entered into a convertible preferred stock purchase agreement with Barron Partners to issue 3,774,000 shares of Series A Convertible Preferred Stock ("Series A Preferred") and a warrant (see note 6) to purchase 3,774,000 shares of common stock for $2,000,000. As described more fully in Note 3, these proceeds will be used primarily to fund the Company's working capital needs, pay the expenses associated with the formation of Company and partially fund the license the Company has obtained of certain retail medical diagnostic products (see Note 6) to sell into the retail drug stores and chains the United States and internet drug retailers.

**NOTE 2 - GOING CONCERN**

These financial statements have been prepared in accordance with generally accepted accounting principles applicable to a going concern, which implies the Company will continue to meets its obligations and continue its operations for the next fiscal year. Realization values may be substantially different from carrying values as shown and these financial statements do not include any adjustments to the recoverability and classification of recorded asset amounts and classification of liabilities that might be necessary should the Company be unable to continue as a going concern. The Company has not generated revenues since inception, has accumulated losses of $132,247 since inception and does not have sufficient working capital to sustain its operations for the next fiscal year. These factors raise substantial doubt regarding the Company's ability to continue as a going concern. The continuation of the Company as a going concern is dependent upon the continued financial support from its shareholders, the ability of the Company to obtain additional necessary equity financing to continue operations, the successful acquisition of a business or assets, and the attainment of profitable operations. Management has plans in place to address this concern and expects that the Company will be able to obtain additional funds by equity financing and/or related party advances; however, there is no assurance that additional funding will be available to the extent required to address this concern.

Lab123, Inc.
(A Development Stage Company)
NOTES TO FINANCIAL STATEMENTS

**NOTE 3 - Summary of Significant Accounting Policies**

*Income Taxes*

The Company is in the development stage and incurred net operating losses, therefore no provisions for income taxes have been established. As of August 31, 2006, the Company's net operating loss carry-forward totaled approximately $132,000.

The Company recorded a deferred tax asset for the tax effect of the net operating loss carry forwards aggregating approximately $49,500. A full valuation allowance has been provided that reduced the tax benefits accrued by the Company for these operating losses to zero as it cannot be determined when, or if, the tax benefits derived from these losses will materialize.

*Development Stage Company*

The Company has not generated any revenues to date; accordingly, the Company is considered a development stage enterprise as defined in Financial Accounting Standards Board No. 7, "Accounting and Reporting for Development Stage Companies." The Company is subject to a number of risks similar to those of other companies in an early stage of development.

*Loss Per Share*

Basic loss per share was computed using the weighted average number of outstanding common shares. Diluted loss per share includes the effect of dilutive common stock equivalents from the assumed exercise of options, warrants and convertible preferred stock. Common stock equivalents were excluded in the computation of diluted loss per share since their inclusion would be anti-dilutive. As of August 31, 2006, the Company did not have common stock equivalents.

*Stock Based Compensation*

The Company adopted SFAS No. 123R "Share Based Payment". This statement is a revision of SFAS Statement No. 123, and supersedes APB Opinion No. 25, and its related implementation guidance. SFAS 123R addresses all forms of share based payment ("SBP") awards including shares issued under employee stock purchase plans, stock options, restricted stock and stock appreciation rights. Under SFAS 123R, SBP awards will result in a charge to operations that will be measured at fair value on the awards grant date, based on the estimated number of awards expected to vest over the service period.

On August 30, 2006, the Company issued 1,500,000 shares of common stock to the Chief Executive Officer; the Company has recorded a charge to operations of $108,000 for the 300,000 shares that vested immediately on the date of issuance. The remaining 1,200,000 shares have been recorded as deferred compensation of $432,000 and will be amortized over the life of the employment agreement (see Note 4). As of August 31, 2006 the Company has not granted options or warrants to purchase shares of its common stock.

Compensation cost for awards that vest will not be reversed if the awards expire without being exercised.

F-7

Lab123, Inc.
(A Development Stage Company)
NOTES TO FINANCIAL STATEMENTS

*Fair Value of Financial Instruments*

The Company evaluates its financial instruments such as convertible preferred stock, options, warrants or other contracts to determine if those contracts or embedded components of those contracts qualify as derivatives to be separately accounted for under Statement of Financial Accounting Standards 133 "Accounting for Derivative Instruments and Hedging Activities" and related interpretations including EITF 00-19 "Accounting for Derivative Financial Instruments Indexed to, and Potentially Settled in, a Company's Own Stock". The result of this accounting treatment is that the fair value of the embedded derivative is marked-to-market each balance sheet date and recorded as a liability. In the event that the fair value is recorded as a liability, the change in fair value is recorded in the consolidated statement of operations as other income or expense. Upon conversion or exercise of a derivative instrument, the instrument is marked to fair value at the conversion date and then that fair value is reclassified to equity.

In circumstances where the embedded conversion option in a convertible instrument is required to be bifurcated and there are also other embedded derivative instruments in the convertible instrument that are required to be bifurcated, the bifurcated derivative instruments are accounted for as a single, compound derivative instrument.

The classification of derivative instruments, including whether such instruments should be recorded as liabilities or as equity, is re-assessed at the end of each reporting period. Equity instruments that are initially classified as equity that become subject to reclassification under SFAS 133 are reclassified to liability at the fair value of the instrument on the reclassification date. Derivative instrument liabilities are classified in the balance sheet as current or non-current based on whether or not net-cash settlement of the derivative instrument is expected within 12 months of the balance sheet date.

At August 31, 2006 the Company has not entered into financial instruments, as discussed above. Please see Note 6 "Subsequent Events" for discussion of financial instruments entered into subsequent to August 31, 2006.

*Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of expenses during the reporting period. Actual results could differ from those estimates.

*Product Warranty*

The Company will offer warranties for certain of its products and/or customers. The Company will accrue its estimated exposure to warranty claims based upon historical warranty claim costs as a percentage of sales. Management will review these estimates on a regular basis and adjust the warranty provisions as actual experience differs from historical estimates. For the period August 25, 2006 (Date of Inception) through August 31, 2006 the Company has not incurred any warranty claims expense as the Company has not yet commenced operations.

Lab123, Inc.
(A Development Stage Company)
NOTES TO FINANCIAL STATEMENTS

*Recent Accounting Pronouncements*

In February 2006, the Financial Accounting Standards Board issued SFAS No. 155, "Accounting for Certain Hybrid Financial Instruments, which amends SFAS No. 133, Accounting for Derivative Instruments and Hedging Activities" ("SFAS No. 155"), and SFAS No. 140, "Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities". SFAS No. 155 simplifies the accounting for certain derivatives embedded in other financial instruments by allowing them to be accounted for as a whole if the holder elects to account for the whole instrument on a fair value basis. SFAS No. 155 also clarifies and amends certain other provisions of SFAS No. 133 and SFAS No. 140. SFAS No. 155 is effective for all financial instruments acquired, issued or subject to a remeasurement event occurring in fiscal years beginning after September 15, 2006. Earlier adoption is permitted, provided we have not yet issued financial statements, including for interim periods, for that fiscal year. The Company does not expect that the adoption of SFAS 155 will have a material impact on its financial position and results of operations.

In July 2006, the Financial Accounting Standards Board (the "FASB") issued FASB Interpretation No. 48, "Accounting for Uncertainty in Income Taxes - an interpretation of FASB Statement No. 109" ("FIN48"), which clarifies the accounting for uncertainty in tax positions. This interpretation requires that the Company recognize in its financial statements, the impact of a tax position, if that position is more likely than not of being sustained on audit, based on the technical merits of the position. The provisions of FIN 48 are effective as of the beginning of the Company's 2007 fiscal year, with the cumulative effect of the change in accounting principle recorded as an adjustment to opening retained earnings. The Company is currently evaluating the impact of adopting FIN 48 on its financial statements.

Lab123, Inc.
(A Development Stage Company)
NOTES TO FINANCIAL STATEMENTS

**NOTE 4 - Related Party Transactions**

*Employment Agreement*

On August 30, 2006 the Company entered into a five year employment agreement with Mike Sosnowik, the Company's CEO, that calls an for annual salary of $200,000 and an incentive bonus of $200,000 if certain target earnings before interest, taxes, depreciation and amortization ("EBITDA") (2007-$2.983,000; 2008- $5,525,000; 2009-$7,385,000) are achieved plus 8% on any earning above target. In addition, Mr. Sosnowik was issued 1,500,000 shares of common stock at par value. Of the total grant, 1,200,000 shares are subject a restriction that requires the return of such shares to the Company, at no cost. This restriction lapses at the rate 300,000 shares for each year the agreement remains in effect. The Company recorded a charge of $108,000 for the 300,000 shares that vested on the date of issuance. The remaining 1,200,000 shares have been recorded as $432,000 of deferred compensation and will be amortized over the life of the agreement.

*Due to Biosafe*

For the period ended August 31, 2006 Biosafe Laboratories, Inc. ("Biosafe") paid legal costs of $ 6,247 on behalf of the Company and incurred costs for certain formation services provided to the Company. As of August 31, 2006, $ 18,619 is due to Biosafe. The balance does not have repayment terms or a stated interest rate. Biosafe is the licensor of the Company's license agreement (see Note 6b).

**NOTE 5 - Commitments**

The Company presently occupies office space provided by the CEO at no charge to the Company, except for office related out-of-pocket expenses.

**NOTE 6 - Subsequent Events**

*a) Private Placement*

On September 6, 2006, the Company sold to Barron Partners, L.P. ("Barron") 3,774,000 shares of Series A Preferred at $0.53 per share, for a total of $2,000,000. One share of Series A Preferred is initially convertible into one share of Common Stock at any time, except that at no time may Barron own any more than 4.9% of the Company's issued and outstanding common stock. In addition, Barron received warrants to purchase 3,774,000 shares of common stock ("warrant"). The warrants entitle the holder to purchase from the Company an equal number of common stock at an exercise price per share of $0.80 for 1,887,000 shares and $1.10 for the remaining 1,887,000 shares. The warrants are exercisable immediately and shall expire five years from the purchase date. Barron Partners will be reimbursed $85,000 to cover its due diligence and transaction costs. The warrants carry a cashless exercise provision.

Pursuant to the terms of the agreement, from September 6, 2006, the purchase date, until the expiration of 48 months after the Closing Date or until Barron owns less than 5% of their Series A Preferred, whichever occurs first, if the Company closes on the sale of a note or notes, shares of common stock, or shares of any class of Preferred Stock at a price per share of common stock, or with a conversion right to acquire common stock at a price per share of common stock, that is less than the conversion value the Company shall make a post-purchase adjustment in the conversion value so that the conversion value is

reduced to price per share of common stock or conversion price of the securities sold.

Conversion price adjustment based on 2006 and 2007 earnings per share:

In the event the Company earns between $0.0306 and $0.0187 (40% Decline) per share (where such earnings in this computation shall always be defined as earnings on a pre tax fully diluted basis for the year ended December 31, 2006 from continuing operations before any non-recurring items), the then current conversion value at the time the 2006 Audited Financials are filed with the SEC shall be decreased proportionally by 0% if the earnings are $0.0306 per share or greater and by 40% if the earnings are $0.0187 per share or less.

In the event the Company earns between $0.19 and $0.1446 (25% Decline) per share (where such earnings in the computation shall always be defined as earnings on a pre tax fully diluted basis for the year ended December 31, 2007 from continuing operations before any non-recurring items),

F-10

Lab123, Inc.
(A Development Stage Company)
NOTES TO FINANCIAL STATEMENTS

the then current conversion value at the time the 2007 Audited Financials are filed with the SEC shall be decreased proportionally by 0% if the earnings are $0.19 per share or greater and by 25% if the earnings are $0.1446 per share or less.

The stock purchase agreement also contains certain covenants including:

- For five years after Closing the Company shall not to enter into any new borrowings of more than twice as much as the sum of the EBITDA from recurring operations over the past four quarters without Barron's consent.

- A majority of the Board of Directors must qualified independent members.

- In any future stock issuance, Barron has the right to purchase issued shares sufficient to prevent dilution.

*b) License of Product Marketing Rights*

On September 7, 2006 the Company entered into a twenty-five year license agreement with Biosafe that gives the Company the exclusive right to market five medical diagnostic tests to retail drug stores and mass merchandisers within the U.S. and internet-based drug retailers for a purchase price of $1,000,000 in cash and 6,050,000 shares of the Company's common stock. The license agreement also includes certain restrictions and rights including the following:

- The licensor is to receive royalty payments of 8% of collected revenues related to the licensed products.
- The continued market exclusivity is dependent upon the Company aggregate unit sales of licensed products of at least 250,000 in 2007 and 300,000 in each subsequent year of the license. Should the unit sales ever drop below the threshold(s), the Company can maintain the exclusivity by paying an amount equal to the minimum royalty on the number of units below the thresholds to maintain exclusivity.
- The Company may continue throughout the entire term of the license agreement to have the licensor produce and process the tests at cost plus 20% or elect to in-source (or out-source to another third-party) the production and processing.

*c) Registration Rights*

On September 6, 2006 The Company has entered into a registration rights agreement with Barron whereby the Company is required to file a registration statement with the SEC, to register the resale of the shares of common stock that the Company will issue upon conversion of the convertible preferred stock and exercise of warrants issued to Barron.

The Company shall use its best efforts to cause the registration statement to be declared effective within 120 days of the closing date.

Under the liquidated damages provision, if the Company fails to meet the effectiveness deadline for the registration statement, the Company shall issue to Barron 2,491 additional shares of the Series A Preferred to Barron as liquidated damages for each day that the registration is not effective after the deadline until September 6, 2008. The obligations of the Company under the registration rights agreement terminate if and when Barron no longer holds more than 5% of its shares of registrable securities.

The Company has also granted to each of the other potential selling stockholders noted below, "piggyback" registration rights

to include shares of common stock they own in the registration statement.

The shareholders granted registration rights and the total number of shares beneficially owned by each of them are: Barron (7,548,000), Biosafe (6,050,000), the CEO of the Company (600,000) and an principals of an advisory firm (125,000).

*d) Advisory Firm*

On September 6, the Company issued 125,000 shares of common stock to principals of an advisory firm for advisory services in connection with the private placement described in note 6a.

F-11

## PART II — INFORMATION NOT REQUIRED IN PROSPECTUS

### Item 24. Indemnification of Directors and Officers

Pursuant to Article V, Section 1 of our By-Laws, we may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Company) by reason of the fact that he or she is or was a director, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceedings, had no reasonable cause to believe his or her conduct was unlawful.

Insofar as indemnification for liabilities arising under the Securities Act may be permitted to Directors, Officers and controlling persons pursuant to the foregoing provisions, or otherwise, we have been advised that in the opinion of the SEC, such indemnification is against public policy as expressed in the Securities Act and is, therefore unenforceable.
Section

### Item 25. Other Expenses of Issuance and Distribution

| | |
|---|---|
| SEC Registration Fee | $ 2,912 |
| Accounting Fees and Expenses | $ 20,000 |
| Legal Fees and Expenses | $ 30,000 |
| Printing and Engraving Costs | $ 5,000 |
| Total | $ 57,912 |

All amounts other than the SEC registration fee are estimates. We will pay all of the expenses of the offering, except that the selling stockholders will pay all brokerage or other commissions or other costs of sale.

### Item 26. Recent Sales of Unregistered Securities

See the transactions described in the "PROSPECTUS SUMMARY - Issuance of Securities to Selling Securities" section of this prospectus.

In connection with these transactions, the Company relied upon the exemptions from registration provided by Section 4(2) of the Securities Act and Rule 506 of Regulation D thereunder as each of the purchasers was an "accredited investor" as defined in Rule 501(a) of Regulation D.

### Item 27. Exhibits.

| Exhibit Number | Description of Exhibit |
|---|---|
| 3.1 | Certificate of Incorporation of the Company* |
| 3.2 | Certificate of Designations of Preferences, Rights and Limitations of Series A Convertible Preferred Stock of the |

Company.*

II-1

| Exhibit Number | Description of Exhibit |
|---|---|
| 3.3 | By-laws of the Company* |
| 4.1 | Common Stock Purchase Warrant A to purchase 1,887,000 shares of Common Stock Issued to Barron* |
| 4.2 | Common Stock Purchase Warrant B to purchase 1,887,000 shares of Common Stock Issued to Barron* |
| 5.1 | Opinion of Guzov Ofsink, LLC** |
| 10.1 | Employment Agreement dated August 30, 2006 between Michael Sosnowik and the Company.* |
| 10.2 | Distributor and License Agreement dated as of September 7, 2006 between Biosafe and the Company.* |
| 10.3 | Preferred Stock Purchase Agreement between the Company and Barron dated September 6, 2006.* |
| 10.4 | Registration Rights Agreement between the Company and Barron dated September 6, 2006.* |
| 21.1 | Subsidiaries of the Registrant - none |
| 23.1 | Consent of Guzov Ofsink, LLC (contained in Exhibit 5.1)** |
| 23.2 | Consent of Marcum & Kliegman LLP* |

*Filed herewith.
** To be filed by amendment

## Item 28. Undertakings

The undersigned registrant hereby undertakes:

1. To file, during any period in which offers or sales are being made, a post-effective amendment to this registration statement:

    (a) To include any prospectus required by Section 10(a)(3) of the Securities Act of 1933;

    (b) To reflect in the prospectus any facts or events arising after the effective date of this registration statement, or most recent post effective amendment, which, individually or in the aggregate, represent a fundamental change in the information set forth in this registration statement; and

    (c) To include any material information with respect to the plan of distribution not previously disclosed in this registration statement or any material change to such information in the registration statement.

2. That, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered herein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

3. To remove from registration by means of a post-effective amendment any of the securities being registered hereby which remain unsold at the termination of the offering.

Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to our directors, officers and controlling persons pursuant to the provisions above, or otherwise, we have been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Securities Act of 1933, and is, therefore, unenforceable.

II-2

## SIGNATURES

In accordance with the requirements of the Securities Act of 1933, the registrant certifies that it has reasonable grounds to believe that it meets all of the requirements of filing on Form SB-2 and authorized this registration statement to be signed on its behalf by the undersigned, in the City of New York, State of New York on September 22, 2006.

**LAB123, INC.**

By  /s/Michael Sosnowik
Michael Sosnowik,
Chief Executive Officer

In accordance with the requirements of the Securities Act of 1933, this registration statement was signed by the following persons in the capacities and on the dates stated:

| Signature | Title | Date |
|---|---|---|
| /s/ Michael Sosnowik<br>Michael Sosnowik | Chief Executive Officer (Principal Executive Officer) and Chief Financial Officer (Chief Financial Officer and Chief Accounting Officer) | September 22, 2006 |
| /s/ Henry Warner<br>Henry Warner | Director and Chairman of the Board | September 22, 2006 |

II-3