# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *Theresa Mellon* | |
| NAME | DATE |
| THERESA MELLON | 04-11-08 |
| TITLE | |
| SUPERVISORY ARCHIVES SPECIALIST | |
| NAME AND ADDRESS OF DEPOSITORY | |
| NARA - Office of Regional Records Services<br>200 Space Center Drive<br>Lee's Summit, MO 64064 | |

NA FORM 13040 (10-86)

Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :

    -v-                            :     INDICTMENT

ANDREW WORDEN,                     :     94 Cr. 469

        Defendant.             :

- - - - - - - - - - - - - - - - - -x

## COUNT ONE

The Grand Jury charges:

### INTRODUCTION

1. At various times relevant to this Indictment, ANDREW WORDEN, the defendant, maintained business offices at 730 Fifth Avenue and 50 West 57th Street in New York, New York.

2. At various times relevant to this Indictment, ANDREW WORDEN, the defendant, maintained at least 90 brokerage accounts with at least 54 broker-dealers located in New York City and throughout the United States. WORDEN placed orders with these broker-dealers to trade securities in these various accounts by telephone from his business offices in New York City.

3. Regulation T, promulgated by the United States Securities and Exchange Commission (Title 12, Code of Federal Regulations, Section 220), allows a stockbroker to purchase a security for a customer, even though the customer has not provided the stockbroker with funds sufficient to cover that purchase, if the stockbroker in good faith relies on an agreement with the customer that the customer will promptly make full cash payment for

the security, and does not contemplate selling the security prior to making that payment.

## THE CONSPIRACY

4. From in or about December, 1988, to in or about March, 1990, in the Southern District of New York and elsewhere, ANDREW WORDEN, the defendant, and other persons known and unknown to the Grand Jury, unlawfully, wilfully and knowingly combined, conspired, confederated and agreed together and with each other to commit offenses against the United States, to wit, to violate Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## OBJECTS OF THE CONSPIRACY

5. It was an object of this conspiracy that ANDREW WORDEN, the defendant, and his co-conspirators, unlawfully, wilfully and knowingly, by use of means and instrumentalities of interstate commerce, the United States mails, and the facilities of the national securities exchanges, directly and indirectly did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c)

engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon certain persons and entities in connection with the purchase and sale of securities.

## MEANS AND METHODS OF THE CONSPIRACY

6. Among the means employed by ANDREW WORDEN, the defendant, and his co-conspirators to carry out the conspiracy, were the following:

(a) At various times during the conspiracy, WORDEN and his co-conspirators falsely portrayed themselves to various broker-dealers as wealthy and creditworthy securities traders with large amounts of funds at their disposal for trading. In order to bolster this false and misleading portrayal, WORDEN and his co-conspirators opened brokerage accounts in the names, among others, of various companies, including Convergence Corporation, Park South Limited Partnership, Fireside Fund Limited Partnership, Worden Management Corporation, Worden Trust Company, and International Asset Management Corporation, and in certain instances, fraudulently misrepresented the net worth and income of these companies.

(b) WORDEN and his co-conspirators fraudulently induced broker-dealers to purchase securities on their behalf, without having previously provided the broker-dealers with funds sufficient to cover those purchases, by making false and fraudulent misrepresentations about their ability and intentions to pay for the securities they purchased.

3

(c) At various times during the conspiracy, WORDEN and his co-conspirators induced broker-dealers to make securities purchases on their behalf by making false promises to wire funds into their accounts to pay for the purchases, and by providing the broker-dealers with checks drawn on a bank account with insufficient funds.

(d) In those instances where the value of the securities purchased by WORDEN and his co-conspirators increased prior to settlement date (which for purchases of stock was five business days after the trade date), WORDEN and his co-conspirators instructed the broker-dealer to sell the securities and to send them, or to credit their accounts with, the difference between the purchase price and the sale price. In this manner, WORDEN and his co-conspirators were able to "free-ride" on the funds and credits of the broker-dealers by profiting from the increase in value of the securities without ever having paid for those securities or having placed their own funds at risk.

(e) In those instances where the value of the securities purchased by WORDEN and his co-conspirators decreased or remained unchanged prior to settlement date, WORDEN and his co-conspirators failed to pay for their securities purchases, forcing the broker-dealer to liquidate the securities position. Those broker-dealers holding securities positions that had decreased in value following the trade date sustained losses after selling off the positions, which WORDEN and his co-conspirators failed fully to reimburse. Instead, in order to continue the cycle of "free-

4

riding", WORDEN and his co-conspirators opened new brokerage accounts with other broker-dealers. WORDEN and his co-conspirators failed to disclose to these new broker-dealers that they had bounced checks to other broker-dealers and that they had debit balances with other broker-dealers. Rather, WORDEN and his co-conspirators once again falsely portrayed themselves to the new broker-dealers as wealthy and creditworthy securities traders.

OVERT ACTS

7. In furtherance of the conspiracy and to effect its objects, ANDREW WORDEN, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. During the period from in or about January, 1989, to in or about March, 1989, WORDEN purchased approximately $5212.81 worth of securities from the brokerage firm of Stuart-James Co., Inc.

    b. During the period from in or about April, 1989, to in or about May, 1989, WORDEN purchased approximately $27,635.00 worth of securities from the brokerage firm of Nelson Securities, Inc.

    c. During the period from in or about April, 1989, to in or about June, 1989, WORDEN purchased approximately $118,575.00 worth of securities from the brokerage firm of Equitable Securities Corp.

5

d. In or about May, 1989, WORDEN purchased approximately $8115.00 worth of securities from the brokerage firm of J.W. Gant & Associates, Inc.

e. During the period from in or about April, 1989, to in or about July, 1989, WORDEN purchased approximately $55,162.50 worth of securities from the brokerage firm of Allegiance Securities, Inc.

f. During the period from in or about May, 1989, to in or about June, 1989, WORDEN purchased approximately $49,692.50 worth of securities from the brokerage firm of Grey, Randolf & Abbott, Ltd.

g. During the period from in or about May, 1989, to in or about June, 1989, WORDEN purchased and sold approximately $151,415.00 worth of securities from the brokerage firm of Gulfstream Financial Associates, Inc.

h. In or about June, 1989, WORDEN purchased approximately $48,992.00 worth of securities from the brokerage firm of Price, Raffel, Browne, Soll, and Rowe Securities, Inc.

i. In or about June, 1989, WORDEN purchased approximately $84,175.00 worth of securities from the brokerage firm of John G. Kinnard and Co., Inc.

j. In or about June, 1989, WORDEN purchased approximately $58,297.50 worth of securities from the brokerage firm of McDaniel, Lewis & Co., Inc.

k. During the period from in or about June, 1989, to in or about March, 1990, WORDEN purchased approximately

$41,125.00 worth of securities from the brokerage firm of Branch, Cabell, and Co.

l. During the period from in or about April, 1989, to in or about June, 1989, WORDEN purchased and sold approximately $60,900.00 worth of securities from the brokerage firm of Advest, Inc.

m. During the period from in or about December, 1988, to in or about April, 1989, WORDEN purchased approximately $32,220.00 worth of securities from the brokerage firm of Huberman Securities Corp.

n. During the period from in or about December, 1988, to in or about June, 1989, WORDEN purchased and sold approximately $108,648.53 worth of securities from the brokerage firm of Neidiger, Tucker, Bruner, Inc.

o. During the period from in or about March, 1989, to in or about May, 1989, WORDEN purchased and sold approximately $83,795.25 worth of securities from the brokerage firm of R.J. Steichen & Company.

p. During the period from in or about May, 1989, to in or about June, 1989, WORDEN purchased approximately $33,065.25 worth of securities from the brokerage firm of Schneider Securities, Inc.

q. During the period from in or about May, 1989, to in or about June, 1989, WORDEN purchased and sold approximately $200,750.00 worth of securities from the brokerage firm of Wessels, Arnold & Henderson.

r. In or about June, 1989, WORDEN purchased approximately $65,800.00 worth of securities from the brokerage firm of Alex Brown & Sons, Inc.

s. During the period from in or about June, 1989, to in or about July, 1989, WORDEN purchased approximately $27,189.25 worth of securities from the brokerage firm of Newhard, Cook & Co.

t. During the period from in or about June, 1989 to in or about August, 1989, WORDEN purchased approximately $145,332.00 worth of securities from the brokerage firm of Henry F. Swift & Co.

u. During the period from in or about March, 1989, to in or about June, 1989, WORDEN sold approximately $40,246.00 worth of securities from the brokerage firm of First Albany Corporation.

v. During the period from in or about April, 1989, to in or about May, 1989, WORDEN sold approximately $15,273.00 worth of securities from the brokerage firm of Interstate/Johnson Lane Corporation.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH TEN

The Grand Jury further charges:

8. The allegations contained in paragraphs 1 through 3, and 6 of Count One of this Indictment are hereby repeated,

realleged, and incorporated by reference as if fully set forth herein.

9. On or about the dates set forth below, in the Southern District of New York and elsewhere, ANDREW WORDEN, the defendant, and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly, by use of means and instrumentalities of interstate commerce, the United States mails, and the facilities of national securities exchanges, directly and indirectly did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon certain persons and entities in connection with the purchase and sale of securities, as specified in each count below:

| Count | Brokerage Account and Date | Broker-Dealer's Approximate Exposure from Defendant's Purchases | Broker-Dealer's Approximate Loss On Liquidation |
|---|---|---|---|
| Two | Nelson Securities (April 1989 - May 1989) | $27,635.00 | $5445.47 |
| Three | Equitable Securities (April 1989 - June 1989) | $118,575.00 | $15,725.00 |
| Four | J.W. Gant & Assoc. (May 1989) | $8115.00 | $3927.50 |
| Five | Grey, Randolf, & Abbott (May 1989 - June 1989) | $49,692.50 | $8930.00 |
| Six | Price, Raffel, Browne, Soll & Rowe (June 1989) | $48,992.00 | $19,984.98 |
| Seven | John G. Kinnard (June 1989) | $84,175.00 | $20,425.00 |
| Eight | Branch, Cabell & Co. (June 1989 - March 1990) | $41,125.00 | $4570.00 |
| Nine | Schneider Securities (May 1989 - June 1989) | $33,065.25 | $2911.75 |
| Ten | Henry F. Swift & Co. (June 1989 - August 1989) | $145,332.00 | $11,725.42 |

(Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.)

*Gwendolyn Bryant*
FOREPERSON

*Mary Jo White*
MARY JO WHITE
United States Attorney

10

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA         :

           -v-                   :     INFORMATION

ANDREW WORDEN,                   :     S1 94 Cr. 469 (LAP)

           Defendant.            :

- - - - - - - - - - - - - - - - -x
```

## COUNT ONE

The United States Attorney charges:

### INTRODUCTION

1. At various times relevant to this Information, ANDREW WORDEN, the defendant, maintained business offices at 730 Fifth Avenue and 50 West 57th Street in New York, New York.

2. At various times relevant to this Information, ANDREW WORDEN, the defendant, maintained at least 90 brokerage accounts with at least 54 broker-dealers located in New York City and throughout the United States. WORDEN placed orders with these broker-dealers to trade securities in these various accounts by telephone from his business offices in New York City.

3. Regulation T, promulgated by the United States Securities and Exchange Commission (Title 12, Code of Federal Regulations, Section 220), allows a stockbroker to purchase a security for a customer, even though the customer has not provided the stockbroker with funds sufficient to cover that purchase, if the stockbroker in good faith relies on an agreement with the customer that the customer will promptly make full cash payment for

the security, and does not contemplate selling the security prior to making that payment.

### THE SCHEME TO DEFRAUD

4. From in or about December 1988, to in or about September 1989, in the Southern District of New York and elsewhere, ANDREW WORDEN, the defendant, unlawfully, wilfully, and knowingly did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

5. It was a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, falsely portrayed himself to various broker-dealers as a wealthy and creditworthy securities trader with large amounts of funds at his disposal for trading. In order to bolster this false and misleading portrayal, WORDEN opened brokerage accounts in the names, among others, of various companies, including Convergence Corporation, Park South Limited Partnership, Worden Management Corporation, Worden Trust Company, and International Asset Management Corporation, and in certain instances, fraudulently misrepresented the net worth and income of these companies.

6. It was further a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, fraudulently induced broker-dealers to purchase securities on his behalf, without having previously provided the broker-dealers with funds sufficient to cover those purchases, by making false and fraudulent misrepresen-

tations about his ability and intentions to pay for the securities he purchased.

7. It was further a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, induced broker-dealers to make securities purchases on his behalf by making false promises to wire funds into their accounts to pay for the purchases, and by providing the broker-dealers with checks drawn on a bank account with insufficient funds.

8. It was further a part of the scheme and artifice to defraud that, in many of the instances where the value of the securities purchased by WORDEN increased prior to settlement date (which for purchases of stock was five business days after the trade date), WORDEN instructed the broker-dealer to sell the securities and to send him, or to credit his account with, the difference between the purchase price and the sale price. In this manner, WORDEN was able to "free-ride" on the funds and credits of the broker-dealers by profiting from the increase in value of the securities without paying for those securities, placing his own funds at risk, or intending to pay or place his own funds at risk.

9. It was further a part of the scheme and artifice to defraud that, in those instances where the value of the securities purchased by WORDEN decreased or remained unchanged prior to settlement date, WORDEN failed to pay for his securities purchases, forcing the broker-dealer to liquidate the securities position. Those broker-dealers holding securities positions that had decreased in value following the trade date sustained losses after

3

selling off the positions, which WORDEN failed fully to reimburse. Instead, in order to continue the cycle of "free-riding," WORDEN opened new brokerage accounts with other broker-dealers. WORDEN failed to disclose to these new broker-dealers that he had bounced checks to other broker-dealers and that he had debit balances with other broker-dealers. Rather, WORDEN once again falsely portrayed himself to the new broker-dealers as a wealthy and creditworthy securities trader.

10. It was further a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, purchased and sold securities with various broker dealers which caused them to sustain losses as set forth in the table below:

| Brokerage Account and Dates | Approximate Value of the Securities Purchased or Sold by the Defendant | Broker-Dealer's Approximate Loss on Liquidation |
|---|---|---|
| Stuart-James & Co. (January 1989 - March 1989) | $5212.81 | $2410.00 |
| Nelson Securities (April 1989 - May 1989) | $27,635.00 | $5445.47 |
| Equitable Securities (April 1989 - June 1989) | $113,575.00 | $15,725.00 |
| J.W. Gant & Assoc. (May 1989) | $8115.00 | $3927.50 |
| Allegiance Securities (April 1989 - July 1989) | $55,162.50 | $11,655.84 |

| Brokerage Account and Dates | Approximate Value of the Securities Purchased or Sold by the Defendant | Broker-Dealer's Approximate Loss on Liquidation |
|---|---|---|
| Grey, Randolf, & Abbott (May 1989 - June 1989) | $49,692.50 | $8930.00 |
| Gulfstream Financial (May 1989 - June 1989) | $151,415.00 | $25,152.00 |
| Price, Raffel, Browne, Soll & Rowe (June 1989) | $48,992.00 | $19,984.98 |
| John G. Kinnard (June 1989) | $84,175.00 | $20,425.00 |
| McDaniel, Lewis & Co. (June 1989) | $58,297.50 | $725.00 |
| Branch, Cabell & Co. (June 1989 - September 1989) | $41,125.00 | $4570.00 |
| Advest, Inc. (April 1989 - June 1989) | $60,900.00 | $16,550.00 |
| Huberman Securities (December 1988 - April 1989) | $32,220.00 | $5,627.00 |
| Neidiger, Tucker, Bruner, Inc. (December 1988 - June 1989) | $108,648.53 | $3,006.25 |
| R.J. Steichen & Co. (March 1989 - May 1989) | $83,795.25 | $9,432.49 |
| Schneider Securities (May 1989 - June 1989) | $33,065.25 | $2911.75 |
| Wessels, Arnold & Henderson (May 1989 - June 1989) | $200,750.00 | $20,500.00 |
| Alex Brown & Sons (June 1989) | $65,800.00 | $6,236.00 |

5

| Brokerage Account and Dates | Approximate Value of the Securities Purchased or Sold by the Defendant | Broker-Dealer's Approximate Loss on Liquidation |
|---|---|---|
| Newhard, Cook & Co. (June 1989 - July 1989) | $27,189.25 | $20,628.50 |
| Henry F. Swift & Co. (June 1989 - August 1989) | $145,332.00 | $11,725.42 |
| First Albany Corp. (March 1989 - June 1989) | $40,246.00 | $1,281.00 |
| Interstate/Johnson Lane Corp. (April 1989 - May 1989) | $15,273.00 | $6,273.00 |

11. On or about June 13, 1989, in the Southern District of New York and elsewhere, ANDREW WORDEN, the defendant, unlawfully, wilfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as set forth in paragraphs 5 through 10 above, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, to wit, a telephone call from WORDEN in New York, New York, to a representative of Branch, Cabell & Co. in Richmond, Virginia, relating to the purchase of 3500 shares of the common stock of Trimedyne, Inc.

(Title 18, United States Code, Section 1343.)

*Mary Jo White*
MARY JO WHITE
United States Attorney

6

30, 1995. Filed Notice of Indictment and Superior Information. Dept. pres w/atty Lawrence Goldman & Elizabeth Johnson. Absit: John McCormick & Ct. Rptr present. Deft. arraigned on Superceded Information and pleads guilty as charged. Court accepts the plea. PSI ordered. Sentence set for 5/10/95 @ 4:00. Deft. cont'd released on bond previously set.

Rucker, J.