UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BARRON PARTNERS, LP,

               Plaintiff,

           -against-

LAB123, INC., HENRY A. WARNER, FRED
FITZSIMMONS, KENT B. CONNALLY, KURT
KATZ, ROBERT TRUMPY, JEREMY J. WARNER,
DAVID FLEISNER, BIOSAFE LABORATORIES,
INC. and BIOSAFE MEDICAL TECHNOLOGIES,
INC.,

               Defendants.

------------------------------------------------------------------X

Docket No.: 07-CV-11135 (JSR)

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT**

Kaufman Dolowich & Voluck LLP
Attorneys for Defendants,
Lab123, Inc., Biosafe Laboratories, Inc.
Biosafe Medical Technologies, Inc.,
Henry A. Warner, Kent B. Connally,
Robert Trumpy and Jeremy J. Warner
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100

On the brief:
Janene M. Marasciullo, Esq.
Todd D. Kremin, Esq.

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii - iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The Court Does Not Have Jurisdiction Over Jeremy Warner
      and Kent Connally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   The Court Should Dismiss Barron's First Amended Complaint . . . . . . . 5

      a.    The Court Should Dismiss the Statutory and Common Law
            Fraud Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      b.    The Court Should Dismiss Count II for Failure to State a Claim         9

      c.    The Court Should Dismiss Count V for Failure to State a Claim         9

      d.    The Court Should Dismiss Count VI for Failure to State a Claim        12

      e.    The Court Should Dismiss Count VII and VIII for Failure to
            State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      f.    The Court Should Dismiss Count IX for Failure to State a Claim . .    15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

CASES                                             PAGE NO.

American Roller Co. v. Foster-Adams Leasing
472 F.Supp. 2d 1019, 1022 n.3 (N.D. Ill 2007)...........................15

A.J. Maggio Co. v. Willis
738 N.E. 2d 592, 316 Ill.App.3d 1043 (Ill.App.Ct. 2000)...........................13

Am Nat'l Bank & Trust Co. v. AXA Client Solutions
2001 WL 743399 (ND Ill. June 29, 2001)...........................13

In re Andrew Velez Constr.
373 B.R. 262 (Bankr. S.D.N.Y. 2007)...........................14

ATSI Communications, Inc. v. Shaar Fund, Ltd.
493 F.3d at 105 (2d Cir 2007)...........................PASSIM

Berk v. Tradewell, Inc.
2003 WL 21664679 (S.D.N.Y. July 16, 2003)...........................14

Bradley v. Staubach
2004 WL 83066 (S.D.N.Y. 2004)...........................3

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.
70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987)...........................14

Crigger v. Fahnestock & Co.
443 F.3d 230 (2d Cir. 2006)...........................7

Dura Pharm., Inc. v. Broudo
544 U.S. 336 (2005)...........................5

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group Inc.
343 F.3d at 193 (2d Cir 2003)...........................PASSIM

E*Trade Fin. Corp. v. Deutche Bank AG
420 F.Supp.2d 273 (S.D.N.Y. 2006)...........................8, 14

Eternity Global Master Fund v. Morgan Trust Co.
375 F.3d 168 (2d Cir. 2004)...........................10

Europadisk Holdings, LLC v. Shelton
2004 WL 613109 n. 5 (S.D.N.Y. March 26, 2004)...........................8

Factory Mut. Ins. Co. v. CICA-TEC Terminal Equip. Corp.,
2006 WL 3825028 (N.D.Ill. Dec. 20, 2006)...................................................... 13

Fantozzi v. Axsys Technologies, Inc.,
2007 WL 2454109 (S.D.N.Y. August 20, 2007) .............................................. 14

First Frontier Pro Rodeo Circuit Finals LLC v. PRCA First Frontier Circuit,
291 A.D.2d 645, 737 N.Y.S.2d 69 (3d Dep't, 2002)......................................... 14

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994).................................................................................. 9

Fischbarg v. Doucet,
38 A.D.3d 270, 832 N.Y.S.2d 164 (1st Dep't, 2007)................................ PASSIM

Glidepath Holding, B.V. v. Spherion Corp.,
2007 WL 2176072 (S.D.N.Y. July 26, 2007).................................................... 8

Goldman v. Metro. Life Ins. Co.,
5 N.Y.3d 561, 807 N.Y.S.2d 583 (2005).......................................................... 14

Hughes v. BCI Int'l Holdings, Inc.,
452 F.Supp.2d 290 (S.D.N.Y. 2006)................................................................. 14

India.Com v. Dalal,
412 F.3d 315 (2d Cir. 2004)............................................................................. 11

In re Sumitomo Copper Litig.,
120 F.Supp.2d 328 (S.D.N.Y. 2000)............................................................. 3, 4

Joseph Sternberg, Inc. v. Walber 36th St. Assoc.,
187 A.D.2d 225 (1st Dep't, 1993).................................................................... 14

Karabu Corp. v. Gitner,
16 F.Supp.2d 319 (S.D.N.Y. 1998).............................................................. 3, 4

Klaxon v. Stentor Elec. Mfg. Co.,
313 U.S. 487 (1941)......................................................................................... 15

Kreuter v. McFadden Oil Corp.,
71 N.Y.2d 460, 522 N.E.2d 40 (N.Y. 1988).............................................. PASSIM

Labaho v. Best Buy Stores,
478 F.Supp.2d 532 (S.D.N.Y. 2007)................................................................. 14

iv

Metro Life Ins. v. RJR Nabisco, Inc.
906 F. 2d 884 (2d Cir. 1990)..................................................... 10, 12

Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.
88 N.Y.2d 347, 668 N.E.2d 404 (N.Y. 1996)............................................ 10

Paukovitz v. Imperial Homes, Inc.
649 N.E.2d 473, 271 Ill.App.3d 1047 (Ill.App.Ct.1995)............................... 13

Penn Comme v. Merill Lynch
372 F.3d 488 (2d Cir. 2004)........................................................... 13

Plymack v. Copley Pharmaceutical Inc.
1995 WL 606272 (S.D.N.Y. Oct. 12, 1995).............................................. 15

Primavera Familienstiftung v. Askin
130 F. Supp. 2d 450 (S.D.N.Y. 2001)................................................... 8

Retail Software Servs., Inc. v. Lashlee
854 F.2d 18 (2d Cir. 1988)........................................................ 3, 4

Ronnen v. Ajax Elec. Motor Corp.
88 N.Y.2d 582, 648 N.Y.S. 2d 422 (1996)............................................. 11

RLS Assocs., LLC v. United Bank of Kuwait PLC
380 F.3d 704 (2d Cir. 2004)...................................................... 10, 11

Tradewinds Aviation, Inc. v. Jet Support Servs, Inc.
2004 WL 2533728 (N.D.Ill. Sept. 28, 2004).......................................... 13

United States v. First Midwest Bank
1997 WL 675192 (N.D. Ill. Oct. 28, 1997)........................................... 13

Welsh v. Servicemaster Corp.
930 F.Supp. 908 (S.D.N.Y. 1996).................................................... 4

# INTRODUCTION

The arguments set forth in Barron's opposition to defendants' Motion to Dismiss are based upon mischaracterization of the controlling caselaw and the facts alleged in the complaint. As explained below, Barron has failed to demonstrate that the Court has jurisdiction over defendants Jeremy Warner ("J. Warner") and Kent Connally ("Connally"), and therefore, the Court should grant their motion to dismiss. Likewise, the Court should grant defendants' motion to dismiss Barron's complaint for failure to state claims upon which relief can be granted. Each issue is addressed in turn.

# ARGUMENT

**I.    The Court Does Not Have Jurisdiction Over Jeremy Warner and Kent Connally**

Barron opposes defendants' motion to dismiss the claims against J. Warner and Connally for lack of personal jurisdiction by arguing that these individuals personally transacted business in New York, Opp.,[1] at 12-15, and by contending that the corporate defendants were acting as their agents and for their benefit. Opp. at 15-18. Both arguments are based upon mischaracterizations of the applicable law and the facts alleged in the complaint.

Relying upon *Fischbarg v. Doucet*, 38 A.D.3d 270, 832 N.Y.S.2d 164 (1st Dep't 2007), Barron erroneously asserts that J. Warner and Connally "transacted business in New York" within the meaning of CPLR §§ 301 and 302 because they had occasional e-mail and telephone communications with Barron. Barron's arguments are based upon a fundamental mischaracterization of *Fischbarg* and the facts alleged in the complaint.

As a threshold matter, *Fischbarg* involved the application of CPLR § 302 and contains no analysis of jurisdiction under CPLR § 301. Moreover, *Fischbarg* does not support the exercise of

---

[1] "Opp." refers to "Plaintiff Barron Partners, LP's Memorandum of Law In Opposition to Defendant's Motion to Dismiss the Amended Complaint," Docket # 29 .

2

jurisdiction over J. Warner and Connally under CPLR § 302. Contrary to Barron's argument, Fischbarg did not hold that a person transacts business in New York by engaging in sporadic e-mail or telephone communications with someone in New York. Rather, Fischbarg, which involved a fee dispute between a New York attorney and his out-of-state client, reiterated the well-settled proposition that "physical presence alone should not determine whether one has purposefully availed itself of a state's rights and benefits for jurisdictional purposes." 38 A.D.3d at 274. However, the court found that defendant's e-mail and telephone communications with plaintiff "were neither insubstantial nor sporadic." Id. Rather, defendants "projected themselves into [the] state by calling plaintiff, who did not know them, consulting him, sending him voluminous documents, and then retaining him as their lawyer." Id. at 275.

Thus, Fischbarg is easily distinguished from this case because J. Warner and Connally had only sporadic and limited contact with New York, and this contact was unrelated to the communications which gave rise to this litigation. Indeed, the sole communication between Connally and Barron involved a March 28, 2007 e-mail by which Connally advised Andrew Worden, that he did not wish to communicate with him. Compl. ¶ 57(f)(2); Opp. at 13. Likewise, J. Warner's post-transaction e-mails forwarding brochures and other information to individuals in Illinois and New York. Opp. at 13. Such limited communications can hardly be construed as an effort to project oneself into a state or to "avail [oneself] of a state's rights and benefits for jurisdictional purposes." Fischbarg, 38 A.D.2d at 275.

Barron's attempt to establish that this Court has jurisdiction over J. Warner and Connally under Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40 (N.Y. 1988) and its progeny is similarly flawed. Indeed, plaintiff has not alleged sufficient facts to assert jurisdiction over J. Warner and Connally under Kreutter.

In Kreutter, the New York Court of Appeals held that individual corporate officers and directors may be subject to the jurisdiction pursuant to New York's long arm statute, CPLR § 302, based upon the corporation's activities in some situations.[2] Specifically, the plaintiff must establish that: (1) that the corporation "engaged in purposeful activities in [New York] in relation to [the] transaction;" (2) "for the benefit of and with the knowledge and consent of the individuals" and (2) that the individuals "exercised some control over [the corporate entity] in the matter." Kreutter, 71 N.Y.2d at 467, 522 N.E.2d at 44. "At the heart of the inquiry is whether the out-of-state corporate officers were 'primary actors in the transactions in New York' that gave rise to the litigation, and not merely some corporate employee[s] who played no part in it." Karabu Corp. v. Gitner, 16 F.Supp.2d 319, 323 (S.D.N.Y. 1998) (quoting Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988)). Furthermore, [p]laintiff's allegations must 'sufficiently detail the defendant's conduct so as to persuade a court that defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon defendant's title or position . . . or upon conclusory allegations that he controls the corporation." In re Sumitomo Copper Litig., 120 F.Supp.2d 328, 336 (S.D.N.Y. 2000)(quoting Karabu Corp., 16 F.Supp.2d at 324); accord Bradley v. Staubach, 2004 WL 83006 (S.D.N.Y. April 13, 2004)

at *4. Barron cannot make this showing.

As a threshold matter, the complaint contains no allegations which suggest that the corporate defendants acted for the benefit of or with the consent of either J. Warner or Connally or that these individual defendants controlled the corporate defendants at the relevant times. Indeed, as explained in our opening brief, the complaint does not allege any facts which indicate

[2] To the extent that Barron contends that Kreutter governs the application of New York's general jurisdiction statute, CPLR § 301, this contention is erroneous. Indeed, Kreutter analyzed only the jurisdictional grant set forth in CPLR § 302. Kreutter, 71 N.Y.2d at 466-67, 469, 523 N.E.2d at 43, 45. See also Bradley, 2004 WL 83006 at * 4.

4

that J. Warner or Connally were involved in the pre-contract negotiations. Def. Mem. at 13- 14.[3]

Moreover, the complaint contains no allegations that these individuals controlled the corporate

defendants during the relevant pre-contract negotiations. Thus, they were not "primary actors in

the transactions in New York that gave rise to the litigation." Retail Software, 854 F.2d at 22;

Karahu Corp., 16 F.Supp.2d at 323. Likewise, the complaint contains no allegations which

suggest that the corporations acted for the benefit of either J. Warner or Connally.

Barron attempts to shore up its deficient complaint by arguing "on information and

belief" that J. Warner and Connally reviewed Biosafe's responses to the due diligence

questionnaire, Opp. at 13, and by reciting a series of post-SPA communications. Opp. at 13.

Barron's efforts to overcome its pleading deficiencies fail for a variety of reasons. First, such a

conclusory allegation does not 'sufficiently detail the defendant's conduct so as to persuade a

court that defendant was a 'primary actor' in the specific matter in question." In re Sumitomo

Copper Litig., 120 F.Supp.2d at 336.[4] Moreover, this conclusory allegation is contradicted by

the complaint with respect to Connally because Connally did not become a director until after the

SPA was executed. Opp at 8; Compl. ¶ 105. Second, the post-SPA communications do not, and

cannot establish that J. Warner and Connally played any role in providing the information that

Barron contends was inaccurate. Indeed, communications which post-date the transaction do not

have any nexus to the conduct about which Barron complains. Kreuter, 71 N.Y.2d at 467.

In sum, the complaint does not allege facts that demonstrate that J. Warner and Connally

purposefully availed themselves of New York's rights and benefits or that indicate that the

corporate defendants acted as their agents. The Court thus does not have jurisdiction over them.

_____

[3] "Def. Mem." refers to Defendants' Memorandum of Law in Support of Its Motion to Dismiss
the Amended Complaint, Docket # 23.

[4] See also Welsh v. Servicemaster Corp., 930 F.Supp. 908, 910 (S.D.N.Y. 1996)(granting Rule
12(b)(2) motion where allegations were made "upon information and belief").

**II.    The Court Should Dismiss Barron's First Amended Complaint**

    **a.    The Court Should Dismiss the Statutory and Common Law Fraud Claims**

    In its opposition to defendants' motion to dismiss, Barron does not argue that it has made

any allegation sufficient to demonstrate loss causation. Opp. at p. 19-27. This failure, by itself,

is fatal to Barron's federal securities claim, Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (U.S.

2005), and its New York common law fraud claims. Emergent Capital Inv. Mgmt., LLC v.

Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003). However, this is not the only reason to

grant defendants' motion to dismiss these claims. Barron also utterly fails to demonstrate

transaction causation.[5]  Although Barron admits that as a sophisticated investor it has a greater

duty of inquiry before it can claim reasonable reliance, Opp. at 20, Barron argues that it

reasonably relied on extra-contractual representations, notwithstanding the Second Circuit's

opinions in Emergent and ATSI Communications, Inc. v. Shaar Fund Ltd., 493 F.3d 87 (2d Cir.

2007). See Opp. at 23. Barron's arguments are based upon fundamental misunderstandings of

the applicable case law and gross distortions of the facts alleged in its own complaint.

    As a threshold matter, Barron errs in its suggestion that Emergent and ATSI are

inapposite because the merger clause in ATSI was more specific than the merger clause

contained in the SPA. Opp. at p. 23. Contrary to Barron's assertions, the merger clauses in both

ATSI and Emergent were, in the words of the Second Circuit, "standard merger clause[s]"

Emergent, 343 F.3d at 193, which were virtually identical to the merger clause in this case.[6]

---

[5]  As explained in our opening brief, Barron's failure to demonstrate reasonable reliance is also
fatal to its common law fraud claims and its statutory fraud claim under the Illinois securities
statute. Def. Mem. at 17.  Therefore, we respectfully ask the Court to dismiss those claims.

[6]  Indeed, the merger clause in the SPA stated: "This Agreement (together with the Schedule,
Exhibits, Warrants, and documents referred to herein) constitute the entire agreement of the
parties and supersede all prior agreements and undertakings, both written and oral, between the
parties, or any of them, with respect to the subject matter hereof." Ex. 33, ¶ 11.4.  (continued)

Moreover, in both ATSI and Emergent, it was not the language of the merger clause that was

dispositive. Rather, it was the absence of contractual language regarding the representation that

defeated the plaintiffs' claims.

For example, in ATSI, the Court held that "where the plaintiff is a sophisticated investor

and an integrated agreement between the parties *does not include the misrepresentation at issue,*

*the plaintiff cannot establish reasonable reliance on that misrepresentation.*" ATSI, 493 F.3d at

105 (emphasis added). Likewise, in Emergent, the Court concluded that the plaintiff could not

have reasonably relied upon a misrepresentation regarding the size of an investment because it

had not "insisted that this representation be included in the stock purchase agreement." 343 F.3d

at 196. Thus, when a sophisticated investor has "notice of material facts which have not been

documented," but proceeds with the transaction without "*inserting appropriate language in the*

*agreement for his protection,* he may truly be said to have willingly assumed the business risk

that the fact may not be as represented." Id. at 195. Barron, however, cannot point to any

language in the SPA which references either the pro forma sales data or the exclusivity of the

License Agreement, and thus, cannot establish reasonable reliance "as a matter of law." Id. at

196.

Barron attempts to avoid the fatal consequences of its failure to insert appropriate

language regarding the pro forma sales data and the License Agreement into the SPA by arguing

that it was not "placed on guard" regarding the accuracy of the sales representations and because

Similarly, in Emergent Capital, the merger clause stated: "that the agreement, together with

accompanying documents,' contained the entire understanding and agreement of the parties . . .

and superseded[] any prior understandings or agreements between them or among any of them."

343 F.3d at 193. Likewise, in ATSI, the merger clause stated: "There are no restrictions,

promises, warranties, or undertakings, other than those set forth and agreed to herein. This

Agreement, the Securities Purchase Agreement, the Escrow Instructions, the Preferred Shares

Agreement, and the Escrow Agreement supersede all prior agreements and undertakings among the parties hereto with respect to the

subject matter hereof." 493 F.3d at 105.

7

the representation regarding the exclusivity of the License Agreement was an "omission." Opp. at 21, 24. Barron's arguments are absurd.

As a threshold matter, Barron was clearly "on notice" that Lab123's pro forma financial data reflected sales for which Lab123 may not have received payment. Indeed, by e-mail dated July 27, 2006, Biosafe's CFO, Robert Trumpy, advised Barron's analyst, Matt Samuel, that if he wished to check the sales figures, that Trumpy would "pull the invoices and payment detail, if paid." Rich Decl. Ex. K. Thus, Biosafe *expressly advised* Barron that some invoices may not have been paid. This was a red flag that a sophisticated investor like Barron could not ignore and still claim reasonable reliance. Crigger v. Fahnestock, 443 F.3d 230, 234-35 (2d Cir. 2006).

Barron's further effort to paint defendants' statements about the exclusivity of the License Agreement as an omission is ridiculous. Barron has repeatedly alleged that defendants stated that the License Agreement was exclusive and that this *representation was* inaccurate. Compl. ¶ 55; Opp. at p. 4. Thus, Barron is not complaining about an omission of fact, but about the accuracy of a representation regarding that fact. Accordingly, if the exclusivity of the License Agreement was important to Barron, it should have insisted that the SPA include language documenting that exclusivity. Under Emergent Capital and ATSI, Barron's failure to include such language in the SPA is fatal to Barron's reasonable reliance claim.

Furthermore, Barron's claimed inability to verify the sales data or the exclusivity of the License Agreement does not excuse its failure to include appropriate protective language regarding the sales data in the SPA. Indeed, in Emergent, the plaintiff could not verify the defendant's representation that it had a $14 million investment in a third party because the data was not publicly available. 343 F.3d at 193. The Second Circuit nonetheless found that plaintiff "should have protected itself by insisting that this representation be included in the stock"

purchase agreement," and "it's failure to do so precludes[,] as a matter of law[,] a finding of reasonable reliance." Emergent, 343 F.3d at 196.

Finally, the lower court cases upon which Barron relies in support of its claim of reasonable reliance are not controlling and are easily distinguished from this case. For example, Primavera Familienstiftung v. Askin, 130 F.Supp.2d 450 (S.D.N.Y. 2001) involved disclaimers set forth in a private placement memorandum, not a negotiated contract, and is thus totally inapposite. Likewise, in Glidepath Holding, B.V. v. Spherion Corp., 2007 WL 2176072, *19 (S.D.N.Y. July 26, 2007), the Court denied a motion to dismiss because the plaintiff alleged it had a fiduciary relationship with the defendant. Moreover, in the two cases that involved negotiated contracts, the contracts contained express representations regarding the misstated fact. For example, in Europadisk Holdings, LLC, v. Shelton, 2004 WL 613109, *3 n. 5 (S.D.N.Y. March 26, 2004), the Court found that a broad merger clause did not prevent plaintiff from claiming reasonable reliance on pre-contract representations because those representations were included in the written agreement. Similarly, in E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F.Supp.2d 273, 279-80 (S.D.N.Y. 2006), the plaintiff relied upon a representation regarding the value of a Deferred Tax Asset, which was included on a balance sheet that was expressly incorporated into the contract. Thus, in both Europadisk and E*Trade, the plaintiffs protected themselves by inserting appropriate language referencing the purported material representations into the agreements.

In sum, Barron's statutory and common law fraud claims fail because it cannot show either loss causation or reasonable reliance. Accordingly, the Court should dismiss counts I, II, III, IV, X and XI for failure to state claims upon which relief can be granted.

**b.  The Court Should Dismiss Count II for Failure to State a Claim**

As already explained, Barron has not alleged sufficient facts to demonstrate a primary

violation of the Federal securities law, and therefore, it "cannot establish control person

liability." Def. Mem. at 25 quoting ATSI, 493 F.3d at 108. Moreover, Barron has utterly failed

to allege any facts which subject J. Warner and Connally to control person liability even if it had

stated a primary violation of the Federal securities law.

Although Barron contends that J. Warner and Connolly "repeatedly and culpably

participated in the fraud perpetrated by the Biosafe Entities and Lab 123," Opp. at 28, Barron

has not cited any specific facts to support this allegation.  Instead, Barron simply asserts "upon

information and belief" that these individuals reviewed the documents which Barron contends

contained misrepresentations.  Opp. at 28.  These conclusory allegations are plainly insufficient

to withstand a motion to dismiss because courts are not required to accept a plaintiff's

"conclusions of law or unwarranted deductions of fact [,]" when deciding such a motion.  First

Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).  This limiting

principle is particularly applicable in fraud cases because Rule 9(b) requires that allegations of

fraud "be stated with particularity."  Fed. R. Civ. P 9 (b); see also First Nationwide Bank, 27

F.3d at 771.  Accordingly, the Court should dismiss Count II for failure to state a claim.

**c.  The Court Should Dismiss Count V for Failure to State a Claim**

Barron attempts to avoid dismissal of Count V, which seeks to recover for breach of the

SPA, by claiming that the SPA, which is drafted, is ambiguous and that all ambiguities must be

resolved in its favor in the context of a motion to dismiss.  Opp. at 30.  Barron again misstates

the controlling law and ignores the relevant facts.  Although contractual ambiguities are

generally resolved in favor of a plaintiff on a Rule 12 motion, this general rule does not apply if

"for some reason the ambiguity must be construed against the plaintiff." Eternity Global Master Fund v. Morgan Trust Co., 375 F.3d 168, 178 (2d Cir. 2004). In this case, Barron drafted the SPA, and therefore, it is not entitled to have any ambiguities resolved in its favor. See RLS Assocs., LLC v. United Bank of Kuwait PLC, 380 F.3d 704, 712 (2d Cir. 2004)(holding that contractual ambiguities are construed against the drafter.) Furthermore, as explained below, the SPA is not ambiguous, and it is clear that Barron's allegations do not allege a breach of its plain and unambiguous terms.

As explained in our opening brief, whether contract is ambiguous "is a question of law to be resolved by the courts." Eternity, 375 F.3d at 179. "Provisions in a contract are not ambiguous merely because the parties interpret them differently." Mount Vernon Fire Ins. Co. v. Creative Housing Ltd., 88 N.Y.2d 347, 352, 668 N.E.2d 404 (1996); accord Metro Life Ins. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)(contract language "whose meaning is otherwise plain is not ambiguous merely because parties urge different interpretations in the litigation.") Rather, a contract is ambiguous when a "contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who examined the entire context of the agreement." Eternity, 375 F.3d at 179.

As already explained, pursuant to the SPA, Lab123 agreed to provide audited financials and agreed not to make any misrepresentation in the SPA or in any document "furnished or to be furnished to the Investor pursuant to this Agreement." Def. Mem. at 28 (discussing Ex. 33, ¶¶ 4.6, 4.15). The SPA specifically identified the documents provided "pursuant to this Agreement," and the pro forma sales data that Barron contends was inaccurate were not among these documents. See Ex. 33, ¶¶ 1.3.20, 3.2, 3.3. Barron does not contend otherwise. Rather, Barron asks the Court to ignore the plain language of the SPA and to construe paragraph 4.15 of

the SPA," "to include documents not expressly identified by name, in the Purchase Agreement."

Opp. at 31. Barron thus invites the Court to ignore the plain language of the SPA.

The Court should not accept Barron's invitation for several reasons. First, such an interpretation would render the express terms of paragraph 4.6, which referred to audited financial reports, and the language of paragraphs 4.15, 1.3.20, and 3.2, which expressly defined the documents to be provided pursuant to the SPA, meaningless. Def. Mem. at 27-29. However, well settled principles of contract interpretation preclude any construction that renders any "contractual provision meaningless or without force." Ronnen v. Ajax Elec. Motor Corp., 88 N.Y.2d 582, 589, 648 N.Y.S.2d 422, 424 (1996); accord India.Com v. Dalal, 412 F.3d 315, 333 (2d Cir. 2004)(Court must give meaning and effect to "every term of the contract."). Second, Barron itself drafted this language and, thus, even if the Court were to conclude that this language is ambiguous, which it isn't, those ambiguities must be construed against Barron. RLS Assocs., LLC, 380 F.3d at 712.

Barron's effort to save its breach claim based upon paragraph 4.16, which required the appointment of independent directors, within the meaning of NASD Rule 4200(a)(15) is even more severely flawed. Significantly, Barron does not argue that either Connally or Fitzsimmons were not independent within the meaning of NASD Rule 4200(a)(15). Indeed, Barron wholly ignores the language of NASD Rule 4200(a)(15), which defines Lab 123's contractual obligation. Barron thus tacitly concedes that it cannot even allege a violation of this contractual provision. Instead, Barron asks this Court to find that Lab123 violated its obligation to have an independent board because Barron does not believe that Connally exercised sufficient independence. However, as explained in our opening brief, Barron's subjective beliefs about

Connally's independence are irrelevant when measuring Lab123's compliance with the contractual obligation set forth in paragraph 4.16 of the SPA. Def. Mem. at 30.

In sum, Barron's arguments in opposition to defendants' motion to dismiss Count V require the Court to ignore the plain and unambiguous language of the contractual provisions that Barron contends were breached. Count V is thus fatally flawed and should be dismissed.

   **d.  The Court Should Dismiss Count VI for Failure to State a Claim**

Barron seeks to avoid dismissal of Count VI, which seeks to recover for breach of the Licensing Agreement between Lab123 and Biosafe, on the theory that the contractual language identifying third party beneficiaries is "ambiguous" and that Illinois law allows parties to recover as third party beneficiaries even if they are not identified as such in the contract. Opp. at 32-35.

Again, Barron mischaracterizes the caselaw and the language of the contract.

As explained in our opening brief, the Licensing Agreement states plainly that there are no third party beneficiaries to the contract. Def. Mem. at 31.[7] Barron asserts, without explanation, that this clear language is ambiguous. However, such plain contractual language is not rendered ambiguous simply because "parties urge different interpretations in the litigation." Metro Life Ins., 906 F.2d at 889.

Moreover, Barron errs in its contention that Illinois law allows parties to sue as third party beneficiaries in the absence of contractual language conferring such a right. As explained in our opening brief, "[f]or a third party to sue on a contract to which it was not a party, the promisor's intention must be evidence by an express provision in the contract identifying the

[7]  The Licensing Agreement states, in pertinent part: "Nothing in this Agreement, expressed or implied, is intended, and shall be construed, to confer upon any Person, (other than the Parties hereto, their successors and permitted assigns, the Biosafe Indemnified Parties, and the Company Indemnified Parties) any rights or remedies under or by reason of this Agreement, including any rights of any kind or nature to enforce this Agreement." Ex. 45, ¶ 12.3.

third party beneficiary." Def. Mem. at 31 citing Am Nat'l Bank & Trust Co. v. AXA Client

Solutions, 2001 WL 743399, * 8 (ND Ill. June 29, 2001) )(citing A.J. Maggio Co. v. Willis, 738

N.E.2d 592, 599, 316 Ill.App.3d 1043 (Ill.App.Ct. 2000). Thus, "the alleged third party

beneficiary must be expressly named in the contract." Paukovitz v. Imperial Homes, Inc., 649

N.E.2d 473, 475, 271 Ill.App.3d 1047, 1039 (Ill.App.Ct. 1995).

The cases cited by Barron do not hold otherwise. To the contrary, in each of those cases,

there was express contract language that identified the plaintiffs as third party beneficiaries in the

contracts at issue.[8] Barron has identified no such language in the Licensing Agreement and none

exists. In sum, the Licensing Agreement is not ambiguous and does not identify Barron as a

third party beneficiary. Therefore, the Court should dismiss Count VI for failure to state a claim.

**e. The Court Should Dismiss Counts VII and VIII for Failure to State Claims**

As already explained in our opening brief, the existence of a valid and enforceable

written contract prevents a party from recovering on a claim of promissory estoppel or

conversion where the written contract governs the conduct supporting the unjust enrichment or

conversion claim. Def. Mem. at 32-34. Furthermore, Barron cannot recover for unjust

enrichment because it concealed the material fact of Worden's record, and thus did not have

clean hands. Id. at 33 n. 10 (citing Penn Comme v. Merrill Lynch, 372 F.2d 488, 493 (2d Cir.

2004). Barron does not argue that it has clean hands, but asserts that the Court should not

---

[8] For example, in Factory Mut. Ins. Co. v. CICA-TEC Terminal Equip. Corp., 2006 WL
3825028, *4 (N.D.Ill. Dec. 20, 2006), the court allowed the City of Chicago to sue as a third
party beneficiary because the contract expressly stated that it was executed for
the benefit of the City. Likewise, in Tradewinds Aviation Inc. v. Jet Support Servs., 2004 WL
2533728 at * 3 (N.D. Ill. Sept. 4, 2004), the contract prohibited third party beneficiary claims
from "unrelated parties," and the court allowed plaintiff's third party beneficiary claims because
the plaintiff was related to one of the signatories through a joint venture agreement. The court
did not rule on the third party beneficiary claim in United States v. First Midwest Bank, 1997
WL 675192, * 19 (N.D. Ill. Oct. 28, 1997).

14

dismiss Counts VII and VIII because Rule 8(e)(2) allows it to plead alternative claims. Opp. at

pp. 35-38. Barron's argument reflects a misunderstanding of Rule 8 and the relevant caselaw.

Although Rule 8 allows parties to plead alternative causes of action, it does not alter the

substantive law. See 28 U.S.C. § 2072(b) (the Federal Rules of Civil Procedure "shall not

abridge, enlarge or modify any substantive right"). It is a well settled tenet of substantive law,

however, that a party may not recover for unjust enrichment where an express contract covers the

subject matter in dispute. Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d

583, 587-88 (2005); Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 521

N.Y.S.2d 653 (1987). It is equally well settled that an action for conversion cannot be predicated

on a breach of contract "unless a legal duty independent of the contract itself has been violated."

Clark-Fitzpatrick, 70 N.Y.2d at 389 (citations omitted); E*Trade, 420 F.Supp.2d at 291.

Significantly, Barron does not dispute the existence of the SPA, which expressly covers

the disputes at issue in both Counts VII and VIII. This is fatal to its ability to recover on Counts

VII and VIII. Furthermore, the cases cited by Barron do not overcome this fatal flaw. Indeed,

in the unjust enrichment cases cited by Barron, the quasi-contract claims were not dismissed

because the parties disputed the existence or enforceability of a contract,[9] or because the plaintiff

had allegedly performed services beyond the scope of the written contract.[10] Likewise, in

Fantozzi v. Axsys Technologies, Inc., 2007 WL 2454109 * 3 (S.D.N.Y. August 20, 2007), the

Court did not dismiss the plaintiff's conversion claim because the contract "does not cover the

alleged facts underlying" that claim. In sum, because it is undisputed that here there is a

---

[9] First Frontier Pro Rodeo Circuit Finals LLC v. PRCA First Frontier Circuit, 291 A.D.2d 645, 646, 737 N.Y.S.2d 694, 695 (3d Dep't 2002); Joseph Sternberg, Inc. v. Walber 36th St. Assoc., 187 A.D.2d 225, 228 (1st Dep't 1993); Labajo v. Best Buy Stores, 478 F.Supp.2d 523, 531 (S.D.N.Y. 2007); Hughes v. BCI Int'l Holdings, Inc., 452 F.Supp.2d 290, 311 (S.D.N.Y. 2006).

[10] Beck v. Tradewell, Inc., 2003 WL 21664679, *2 (S.D.N.Y. July 16, 2003); E*Trade, 420 F.Supp.2d at 291; In re Andrew Velez Constr., 373 B.R. 262, 279 (Bankr. S.D.N.Y. 2007).

15

written contract that clearly governs the conduct at issue, the Court should dismiss Count VII and

Count VIII.

**f.    The Court Should Dismiss Count IX for Failure to State a Claim**

Barron attempts to avoid dismissal of Count IX, which seeks to recover under Illinois

Consumer Fraud and Deceptive Business Practices Act (the "Illinois Act"), by arguing that that

there is no requirement that it be a "consumer" to avail itself of the Illinois Act and that securities

constitute merchandise under the Illinois Act.[11] Barron errs in these arguments.

As already explained, Barron is not a consumer within the meaning of the Illinois Act

and, therefore, must allege facts to demonstrate a consumer nexus to bring an action under the

Act. Def. Mem. at 34, n. 11. Barron has not, however, alleged any such facts. Likewise, recent

published authority squarely holds that the securities at issue are not "merchandise" within the

meaning of the Illinois Act. American Roller Co. v. Foster-Adams Leasing, 472 F.Supp. 2d

1019, 1022 n.3 (N.D. Ill 2007). For the foregoing reasons, Barron's claim under the Illinois Act

(Count IX) should be dismissed.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in Defendants' Memorandum,

Defendants respectfully request that the Court dismiss the Complaint.

Respectfully submitted,

Jariene M. Marasciullo (JM0007)

---

[11] Barron also argues that the parties' contractual choice of law provision does not govern. However, as a federal court sitting in diversity, this Court must apply New York choice of law principles to Barron's claims. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). This is fatal to Barron's ability to recover under the Illinois Act because New York's choice of law rules require this court to apply the law of New York to any tort-based claim, such as a claim under the Illinois Act. Plymack v. Copley Pharm, Inc., 1995 WL 606272 at * 4-5 (S.D.N.Y. Oct. 12, 1995).

Dated: May 29, 2008

Todd D. Kremin (TK-0102)
Kaufman Dolowich & Voluck LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100

ND: 4833-9691-7762, v. 1

## CERTIFICATE OF SERVICE

I, **TODD D. KREMIN**, attorney for Defendants, LAB123, INC., BIOSAFE

LABORATORIES, INC., BIOSAFE MEDICAL TECHNOLOGIES, INC., HENRY

A. WARNER, KENT B. CONNALLY, ROBERT TRUMPY and JEREMY J.

WARNER, do hereby certify that a true and correct copy of the DEFENDANTS'

REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE

COMPLAINT was filed electronically with the Court using the CM/ECF system,

which sent notification to the following parties:

Barry R. Lax, Esq.
Lax & Neville, LLP
Attorneys for Plaintiff
1412 Broadway
Suite 1407
New York, NY 10018
(212) 696-1999

<u>First Class Mail Only</u>

Arthur W. Aufmann, Esq.
Edward T. Joyce & Associates, P.C.
Attorneys for Settling Defendants
11 South LaSalle St., Suite 1600
Chicago, Illinois 60603
(312) 641-2600

Dated: May 29, 2008

TODD D. KREMIN, ESQ. (TK-0102)

ND: 4829-5068-3394, v. 1