UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BARRON PARTNERS, LP,

                Plaintiff,

        -against-

LAB123, INC., HENRY A. WARNER, FRED
FITZSIMMONS, KENT B. CONNALLY, KURT
KATZ, ROBERT TRUMPY, JEREMY J. WARNER,
DAVID FLEISNER, BIOSAFE LABORATORIES,
INC. and BIOSAFE MEDICAL TECHNOLOGIES,
INC.,

                Defendants.

-----------------------------------------------------------------X

Docket No.: 07-CV-11135 (JSR)

**DEFENDANTS' FIRST AMENDED
ANSWER, AFFIRMATIVE
DEFENSES AND
COUNTERCLAIMS**

      For their Answer to Plaintiff's First Amended Complaint, Defendants Lab123, Inc.

("Lab123"), Biosafe Medical Technologies, Inc. ("BMT"), Biosafe Laboratories, Inc. ("Biosafe

Labs"), Henry A. Warner and Robert Trumpy (collectively "Defendants"),[1] by their attorneys,

Kaufman Dolowich & Voluck LLP, respond as follows:

<u>**AS AND FOR DEFENDANTS' RESPONSES**</u>

1.     The allegations in paragraph 1 of the First Amended Complaint are conclusions of law

       and mischaracterizations of fact to which no response is required; to the extent they are

       deemed allegations of fact, they are denied.

2.     The allegations in the first sentence of paragraph 2 of the First Amended Complaint are

       conclusions of law and mischaracterizations of fact to which no response is required; to

       the extent they are deemed allegations of fact, they are denied.  Admit the allegations in

---

[1]     By Order dated July 25, 2008, the Court dismissed the First Amended Complaint against Kent B. Connally
and Jeremy J. Warner for lack of jurisdiction.  Additionally, by Stipulation and Order filed on May 8, 2008, Docket
Entry No. 21, the First Amended Complaint was dismissed against Kurt Katz.

the second sentence of paragraph 2 of the First Amended Complaint that Henry Warner was CEO and Chairman of the Board of Directors of BMT and Chairman of the Board of Directors of Biosafe Labs.  By way of further answer to the allegations in the second sentence of paragraph 2 of the First Amended Complaint, Defendants aver that Henry Warner was Chairman of the Board of Directors of Lab123 until August 7, 2007.  The remaining allegations in paragraph 2 of the First Amended Complaint are conclusions of law, mischaracterizations of fact and argument which no response is required; to the extent they are deemed allegations of fact, they are denied.

3.      The allegations in paragraph 3 of the First Amended Complaint are conclusions of law, mischaracterizations of fact and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

4.      The allegations in paragraph 4 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

5.      The allegations in paragraph 5 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the Opinion and Order of the Court dated July 25, 2008, dismissed this action against Defendants Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

6.      The allegations in paragraph 6 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that this Court dismissed the First

Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

7.    The allegations in paragraph 7 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that this Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

8.    The allegations in paragraph 8 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that the Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

9.    The allegations in paragraph 9 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that the Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

10.    The allegations in paragraph 10 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that this Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

11.    The allegations in paragraph 11 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that this Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

12.    The allegations in paragraph 12 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that this Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

13.    The allegations in paragraph 13 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that this Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

14.    The allegations in paragraph 14 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that this Court dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

15.    The allegations in paragraph 15 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that this Court

dismissed the First Amended Complaint against Kent B. Connally and Jeremy J. Warner for lack of personal jurisdiction.

16.    Admit that Lab123 entered into a Preferred Stock Purchase Agreement with Plaintiff. The remaining allegations in paragraph 16 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the Preferred Stock Purchase Agreement is the best evidence of its contents.

17.    Admit.

18.    The allegations in paragraph 18 of the First Amended Complaint contain misleading quotations from the Stock Purchase Agreement, and therefore are denied.  By way of further answer, Defendants aver that the Preferred Stock Purchase Agreement is the best evidence of its contents.

19.    Admit that Lab123 is a Delaware Corporation.  Deny the remaining allegations in paragraph 19 of the First Amended Complaint.

20.    Admit that Guzov Ofsink, LLC ("Guzov Ofsink") provided legal services to Lab123. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 20 of the First Amended Complaint.

21.    The allegations in paragraph 21 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver, upon information and belief, that Guzov Ofsink did not act solely in the interest of Lab123.

22.  Admit.

23.  The allegations in paragraph 23 of the First Amended Complaint are conclusions of law to which no response is required.  To the extent the allegations in paragraph 23 are deemed allegations of fact, Defendants deny the allegations that Guzov Ofsink filed Lab123's SEC filings.  By way of further answer, Defendants aver, upon information and belief, that Vintage Filings, LLC performed the filing of Lab123's various filings with the SEC.  Deny the allegation that Guzov Ofsink communicated with the SEC by letter for lack of knowledge or information sufficient to form a belief about the truth of the allegation.  Deny the remaining allegations in paragraph 23 of the First Amended Complaint.

24.  Admit that Sichenzia Ross Friedman Ference LLP ("Sichenzia Ross") provided legal services to Lab123 in connection with Lab123's SEC filings and by way of further answer, Defendants aver, upon information and belief, that Sichenzia Ross did not act solely in the interest of Lab123.  Defendants lack knowledge and information sufficient to form a belief about the truth of the remaining allegations in paragraph 24 of the First Amended Complaint.

25.  Admit.

26.  The allegations in the first sentence of paragraph 26 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied. Defendants admit that Marcum & Kliegman LLP ("Marcum & Kliegman") provided accounting services to Lab123 but deny that Marcum & Kliegman served as "independent auditors."

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 26 of the First Amended Complaint.

27. Admit the allegations in the first sentence of paragraph 27 of the First Amended Complaint that representatives from BMT and Biosafe Labs met with Pfizer in New York. Deny the allegation in the first sentence of paragraph 27 of the First Amended Complaint that Henry Warner met with Pfizer representatives in New York. Defendants deny the allegations in the second sentence of paragraph 27 of the First Amended Complaint for lack knowledge and information sufficient to form a belief about the truth of those allegations.

28. The allegations in the first sentence of paragraph 28 of the First Amended Complaint are mischaracterizations of fact to which no response is required. To the extent they are deemed allegations of fact, they are denied. Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 28 of the First Amended Complaint. Defendants deny the allegations in the third sentence of paragraph 28 of the First Amended Complaint.

29. The allegations in the first sentence of paragraph 29 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied. Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in the second and third sentences of paragraph 29 of the First Amended Complaint.

30. The allegations in the first sentence of paragraph 30 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

31.    Admit.

32.    The allegations in paragraph 32 of the First Amended Complaint are conclusions of law to which no response is required; to the extent the allegations in paragraph 32 of the First Amended Complaint are deemed allegations of fact, defendants deny that Biosafe labs was required to designate an assistant lab director.

33.    The allegations in paragraph 33 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied, but admit the remaining allegations.

34.    The allegations in paragraph 34 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

35.    The allegations in paragraph 35 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

36.    The allegations in paragraph 36 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

37.    The allegations in paragraph 37 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

38.    Admit that BMT, Biosafe Lab, Lab123, and Henry Warner had telephone conversations with Plaintiff.  The remaining allegations in paragraph 38 of the First Amended

Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

39.     Admit that Defendants exchanged e-mails with Plaintiff. By way of further answer, Defendants aver that the e-mails are the best evidence of their contents. The remaining allegations in paragraph 39 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

40.     The allegations in paragraph 40 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

41.     Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 41 of the First Amended Complaint. The allegations in the second sentence of paragraph 41 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

42.     The allegations in the first sentence of paragraph 42 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that an accurate description of Lab123 is contained in its registration statement filed with the SEC. Defendants admit the allegations in the second sentence of paragraph 42 of the First Amended Complaint that Lab123's common stock is not currently listed on an exchange. The remaining allegations in the second sentence of paragraph 42 of the First

Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

43. Deny the allegations contained in the first sentence of paragraph 43 of the First Amended Complaint. Admit the allegations contained in the second sentence of paragraph 43 of the First Amended Complaint.

44. Deny the allegations contained in the first sentence of paragraph 44 of the First Amended Complaint. Admit the allegations in the second sentence of paragraph 44 of the First Amended Complaint. Admit the allegation in the third sentence of paragraph 44 of the First Amended Complaint that BMT transferred all of its patents to Biosafe Labs in 2007. Deny the remaining allegations in paragraph 44 of the First Amended Complaint.

45. Admit.

46. The allegations in the first sentence of paragraph 46 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent the allegations in the first sentence of paragraph 46 of the First Amended Complaint are deemed allegations of fact, Defendants admit the allegation in the first sentence of paragraph 46 of the First Amended Complaint that Robert Trumpy is a resident of Illinois and was the Chief Financial Officer of BMT from November 24, 2003 through January 1, 2008 but deny the remaining allegations in the first sentence of paragraph 46 of the First Amended Complaint. The allegations in the second and third sentences of paragraph 46 of the First Amended Complaint are conclusion of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

47.    The allegations in the first sentence of paragraph 47 are conclusions of law and mischaracterizations of fact to which no response is required; to the extent the allegations in the first sentence of paragraph 47 of the First Amended Complaint are deemed allegations of fact, Defendants admit that Mr. Warner is a resident of Illinois and has been Chief Executive Officer and Chairman of the Board of BMT, and Chairman of the Board of Biosafe Labs and Lab123, but deny the remaining allegations in the first sentence of paragraph 47 of the First Amended Complaint. Admit the allegations in the second sentence of paragraph 47 of the First Amended Complaint that Henry Warner was Chief Executive Officer of BMT and Chairman of the Board of BMT and Biosafe Labs, but deny the remaining allegations in the second sentence of paragraph 47 of the First Amended Complaint. The allegations in the third and fourth sentences of paragraph 47 of the first amended complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

48.    The allegations in the first sentence of paragraph 48 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent the allegations in the first sentence of paragraph 48 of the First Amended Complaint are deemed allegations of fact, Defendants admit that Jeremy J. Warner was a resident of Illinois and held the position of Director of Business Development for BMT, but deny the remaining allegations in the first sentence of paragraph 48 of the First Amended Complaint. The allegations in the second and third sentences of the First Amended complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

49.    The allegations in the first sentence of paragraph 49 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent the allegations in the first sentence of paragraph 49 of the First Amended Complaint are deemed allegations of fact, Defendants admit that Mr. Connally became a member of Lab123's Board of Directors of Lab123, and its audit and compensation committees, on September 29, 2006. Defendants deny the remaining allegations in first sentence of paragraph 49 of the First Amended Complaint. The allegations in the second and third sentences of paragraph 49 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

50.    The allegations in paragraph 50 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

51.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51 of the First Amended Complaint.

52.    The allegations in the first sentence of paragraph 52 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied. Defendants admit the allegations in the second sentence of paragraph 52 of the First Amended Complaint. The remaining allegations in paragraph 52 of the complaint are mischaracterizations of fact to which no response s required; to the extent they are deemed allegations of fact, they are denied.

53.   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first and third sentences of paragraph 53 of the First Amended Complaint.  Admit the allegations in the second sentence of paragraph 53 of the First Amended Complaint that Plaintiff's requested that BMT and Biosafe Labs complete one of Plaintiff's standard due diligence forms, Form MDR (the "Questionnaire").  Defendants lack knowledge and information sufficient to form a belief about the truth of the remaining allegations in the second sentence of paragraph 53 of the First Amended Complaint.

54.   Admit the allegations in the first sentence of paragraph 54 of the First Amended Complaint that on August 14, 2006, Mr. Trumpy responded to the Questionnaire by e-mail.  Deny the remaining allegations in the first sentence of paragraph 54 of the First Amended Complaint.  Deny the allegations in the second sentence of paragraph 54 of the First Amended Complaint, and by way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.

55.   The allegations in paragraph 55 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.

56.   The allegations in paragraph 56 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.

57.     The allegations in the first and second sentences of paragraph 57 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

    a.   Deny.  By way of further answer, Defendants aver that Biosafe Labs honored the terms of the Licensing Agreement between Biosafe Labs and Lab123.

    b.   Deny.  By way of further answer, the Licensing Agreement between Biosafe Labs and Lab123 expressly stated that the distribution rights granted to Lab123 specifically excludes sales to pharmaceutical companies, such as Johnson & Johnson.

    c.   Deny.

    d.   Deny the allegations in the first and second sentence of paragraph 57.d. of the First Amended Complaint.  By way of further answer, Defendants aver that The Ultimate Health Club, Inc. was defunct at the time of the transaction between Lab123 and Plaintiff.   Admit the allegations in the third sentence of paragraph 57.d. of the First Amended Complaint. By way of further answer, Defendants aver that The Ultimate Health Club, Inc. was defunct at the time of the transaction between Lab123 and Plaintiff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the fourth sentence of paragraph 57.d. of the First Amended Complaint.

    e.   Deny.  By way of further answer, Defendants aver that Chris Warner set up a website to sell Anemia Meters that he purchased from Lab123.

    f.   The allegations in paragraph 57.f. of the First Amended complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

        1)   Admit the allegations in the first sentence of paragraph 57.f.1 of the First Amended Complaint.  Admit the allegation in the first clause of the second sentence of paragraph 57.f.1 of the First Amended Complaint that Mr. Warner sent Mr. Samuel and e-mail dated July 31, 2006.  The allegation in the second clause of second sentence of paragraph of paragraph 57.f.1 is a mischaracterization of fact, and is denied, and by way of further answer, Defendants aver the July 31, 2005 e-mail is the best evidence of its contents.  The remaining allegations in paragraph 57.f.1 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

        2)   The allegations in paragraph 57.f.2 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the e-mails referenced in paragraph 57.f.2 of the First Amended Complaint are the best evidence of their contents.

58.   Admit the allegations in the first sentence of paragraph 58 of the First Amended Complaint that BMT and Biosafe Labs responded to the Questionnaire. The remaining allegations in the first sentence of paragraph 58 of the First Amended Complaint are

mischaracterizations of fact to which no response is required; to the extent the allegations in the first sentence of paragraph 58 of the First Amended Complaint are deemed allegations of fact, Defendants aver that the responses to the Questionnaire are the best evidence of their contents. The allegations in the second sentence of paragraph 58 are conclusions of law mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

59.  Admit the allegations in the first clause of the first sentence of paragraph 59 of the First Amended Complaint that BMT and Biosafe Labs responded to the Questionnaire. The remaining allegation in paragraph 59 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.

60.  The allegations in paragraph 60 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

61.  Admit the allegations in the first sentence of paragraph 61 of the First Amended Complaint that BMT and Biosafe Labs responded to the Questionnaire. The remaining allegation in paragraph 61 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.

62.    The allegations in paragraph 62 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

63.    Admit the allegations in the first and second sentences of paragraph 63 of the First Amended Complaint.  By way of further answer, Defendants aver that the Licensing Agreement between Biosafe Labs and Lab123 is the best evidence of its content.   Deny the allegations in the third sentence of paragraph 63 of the First Amended Complaint.

64.    Admit the allegations in the first sentence of paragraph 64 that the Questionnaire asked certain questions, and by way of further answer, Defendants aver that the Questionnaire is the best evidence of its contents.  Admit the allegations in the second sentence of paragraph 64 that Biosafe Labs and Lab123 responded to the Questionnaire, and by way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.   The allegations of the third and fourth sentences of paragraph 64 are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact.

65.    Admit the allegations in the first sentence of paragraph 65 that BMT and Biosafe Labs responded to the Questionnaire, and by way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.  The allegations in the second and third sentences of paragraph 65 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

66.    The allegations in paragraph 66 of the First Amended Complaint are conclusions of law and misrepresentations of fact to which no response is required; to the extent the

allegations in paragraph 66 of the First Amended Complaint are deemed allegations of fact, Defendants admit that BMT and Biosafe Labs responded to the Questionnaire, but deny that Defendants represented that the License Agreement was the only royalty, licensing, or other significant agreement, and by way of further answer, Defendants aver that the responses to the Questionnaire are the best evidence of their contents.

67.    The allegations in paragraph 67 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

68.    The allegations in first and second sentences of paragraph 68 are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the e-mails and documents referenced in the first and second sentence of paragraph 68 of the First Amended Complaint are the best evidence of their contents. Admit the allegation in the first clause of the third sentence of paragraph 68 of the First Amended Complaint that Mr. Warner sent Plaintiff an e-mail on May 23, 2006. The remaining allegations in the third sentence of paragraph 68 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied and by way of further answer, Defendants aver that the May 23, 2006 e-mail is the best evidence of its contents.  The remaining allegations in paragraph 68 are conclusions of law, mischaracterizations of fact and argument to which no response is required; to the extent that the remaining allegations in paragraph 68 of the First Amended Complaint are deemed allegations of fact, they are denied.

69.    Admit the allegations in the first sentence of paragraph 69 of the First Amended

Complaint that Plaintiffs itself established the valuation of its investment in Lab123.  The

remaining allegations in the first sentence of paragraph 69 of the First Amended

Complaint are conclusions of law and mischaracterizations of fact to which no response

is required; to the extent they are deemed allegations of fact, they are denied. The

allegations in the second sentence of paragraph 69 of the First Amended Complaint are

conclusions of law, mischaracterizations of fact, and argument to which no response is

required; to the extent that the allegations in the second sentence of paragraph 69 are

deemed allegations of fact, Defendants lack knowledge and information sufficient to

form a belief about their truth.  Admit the allegation in the third sentence of paragraph 69

of the First Amended Complaint that Plaintiff drafted the deal documents for the

transaction with Lab123.  The remaining allegations in the third sentence of paragraph 69

of the First Amended Complaint are conclusions of law and mischaracterizations of fact

to which no response is required; to the extent they are deemed allegations of fact, they

are denied.

70.    Admit the allegation in the first clause of the first sentence of paragraph 70 of the First

Amended Complaint that Mr. Trumpy sent to Plaintiff a revised letter of Intent.  Deny the

remaining allegations of the first sentence of paragraph 70 of the First Amended

Complaint, and by way of further answer, Defendants aver that the revised Letter of

Intent reflected input from Defendants and Plaintiff, and the Revised Letter of Intent is

the best evidence of its contents.  The allegations in the second sentence of paragraph 70

of the First Amended Complaint are mischaracterizations of fact and arguments to which

no response is required; to the extent they are deemed allegations of fact, they are denied,

and by way of further answer, Defendants aver that Plaintiff's contributed to the content of the quoted portion of the Letter of Intent. The allegations in the third sentence of paragraph 70 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

71. The allegations of paragraph 71 of the First Amended Complaint are mischaracterizations of fact and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied, and by way of further answer, Defendants aver that the revised Letter of Intent is the best evidence of its contents.

72. Admit the allegations in the first sentence of paragraph 72 of the First Amended Complaint. Admit the allegations in the first clause of the second sentence of paragraph 72 that the revised projections decreased the future projected revenue of Lab123. The remaining allegations in paragraph 72 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

73. Defendants lack knowledge or information sufficient to form a belief about the allegations in the first sentence of paragraph 73 of the First Amended Complaint. Admit the first clause of the second sentence of paragraph 73 of the First Amended Complaint that Mr. Trumpy sent Plaintiff a document entitled "Biosafe Medical Technologies, Sales by Customer Summary", and by way of further answer, Defendants aver that the document entitled "Biosafe Medical Technologies, Sales by Customer Summary" is the best evidence of its contents. The remaining allegations in the second sentence and the allegations in the third fourth and fifth sentences of paragraph 73 of the First Amended

Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

74.    The allegations contained in paragraph 74 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By was of further answer, Defendants aver that the Sales by Customer Summary is the best evidence of its contents.

75.    The allegations in paragraph 75 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that CVS's purchase orders described the terms of payment as "net days: 30".

76.    The allegations in paragraph 76 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, CVS's purchase orders described the terms of payment as "net days: 30".

77.    The allegations in paragraph 77 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that they advised Plaintiff that the terms of payment on the Walgreens sales was "pay-on-scan".

78.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 78 of the First Amended Complaint. The allegations in the second sentence of paragraph 78 are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are

denied.  Admit the allegations in the third sentence of paragraph 78 of the First Amended

Complaint that Mr. Warner sent an e-mail to Plaintiff, and by way of further answer,

Defendants aver that the June 20, 2006 e-mail is the best evidence of its contents.   The

allegations contained in the fourth and fifth sentences of paragraph 78 of the First

Amended Complaint are conclusions of law and mischaracterizations of fact to which no

response is required; to the extent they are deemed allegations of fact, they are denied.

79.    Admit the allegation in the first sentence of paragraph 79 of the First Amended

Complaint that Mr. Trumpy sent an e-mail to Plaintiff, and by way of further answer,

Defendants aver that the e-mail referenced in the first sentence of paragraph 79 is the best

evidence of contents.  The remaining allegations in the first sentence and the allegations

in the second sentence of paragraph 79 of the First Amended Complaint are conclusions

of law and mischaracterizations of fact to which no response is required; to the extent

they are deemed allegations of fact, they are denied.

80.    Admit the allegations in the second clause of the first sentence of paragraph 80 of the

First Amended Complaint that Mr. Trumpy sent an e-mail to Plaintiff on July 27, 2006,

and by way of further answer, Defendants aver that the July 27, 2006 e-mail is the best

evidence of its contents.  The remaining allegations in the first sentence and the

allegations in the second and third sentences of paragraph 80 of the First Amended

Complaint are conclusions of law and mischaracterizations of fact to which no response

is required; to the extent they are deemed allegations of fact, they are denied.

81.    The allegations in paragraph 81 of the First Amended Complaint are conclusions of law

and mischaracterizations of fact to which no response is required; to the extent they are

deemed allegations of fact, they are denied, and by way of further answer, Defendants

aver that the document referenced in paragraph 81 of the First Amended Complaint is the best evidence of its contents.

82. The allegations contained in the first sentence paragraph 82 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied. Admit the allegations in the first clause of the second sentence of paragraph 82 of the First Amended Complaint that Mr. Warner sent Mr. Samuel an e-mail dated July 31, 2006, and by way of further answer, Defendants aver that the e-mail referenced in the second sentence of paragraph 82 of the First Amended Complaint is the best evidence of its contents. The remaining allegations in the second sentence of paragraph 82 are mischaracterizations of fact and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied. The allegations in the third sentence of paragraph 82 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

83. The allegations contained in paragraph 83 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied, and by way of further answer, Defendants aver that the e-mails referenced in paragraph 83 of the First Amended Complaint are the best evidence of their contents.

84. Admit the allegations in the first clause of the first sentence of paragraph 84 of the First Amended Complaint that Plaintiff prepared its own intrinsic value and earnings calculations. The remaining allegations in paragraph 84 of the First Amended Complaint

are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

85.    Admit the allegation in the first sentence of paragraph 85 of the First Amended Complaint that on August 9, 2006, plaintiff sent an e-mail to Mr. Warner and Mr. Trumpy, and by way of further answer, Defendants aver that the August 9, 2006 e-mail is the best evidence of its contents.  The remaining allegations in the first sentence of paragraph 85 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 85 of the First Amended Complaint. Admit the allegation in the third sentence of paragraph 85 that Preferred Stock Purchase Agreement contained section 4.16; the remaining allegations in the third sentence of paragraph 85 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent the remaining allegations in the third sentence of paragraph 85 of the First Amended Complaint are deemed allegations of fact, they are denied, and by way of further answer, Defendants aver that the Preferred Stock Purchase Agreement is the best evidence of its contents.

86.    Admit the allegation in the first sentence of paragraph 86 of the First Amended Complaint that on August 10, 2006, Mr. Warner sent an e-mail to Plaintiff, and by way of further answer, Defendants aver that the August 10, 2006 e-mail is the best evidence of its content. The remaining allegations in the first sentence and the allegations in the second and third sentences of paragraph 86 of the First Amended Complaint are

conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

87.     The allegations in paragraph 87 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

88.     Admit the allegations in the first sentence of paragraph 88 of the First Amended Complaint.  The remaining allegations in paragraph 88 of the First Amended Complaint are conclusion of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

89.     The allegations in paragraph 89 are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

90.     Admit the allegations in the first sentence of paragraph 90 of the First Amended Complaint.  Admit the allegation in the first clause of the second sentence of paragraph 90 that Mr. Fitzsimmons was a member of the Board of Directors of BMT.  The remaining allegations in the second sentence of paragraph 90 of the First Amended Complaint are conclusion of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

91.     The allegations in the first and second sentences of paragraph 91 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied. Admit the allegations of the third sentence of paragraph 91 of the First Amended Complaint.

92.    Admit the allegations in the first clause of the first sentence of paragraph 92 of the First
       Amended Complaint that Mr. Fitzsimmons wrote a March 16, 2007 memorandum, and
       by way of further answer, Defendants aver that the March 16, 2007 memorandum
       referenced in paragraph 92 of the First Amended Complaint is the best evidence of its
       contents.  The remaining allegations in paragraph 92 of the First Amended Complaint are
       conclusions of law, mischaracterizations of fact, and arguments to which no response is
       required; to the extent they are deemed allegations of fact, they are denied

93.    Admit the allegation in paragraph 94 of the First Amended Complaint that on March 19,
       2007, Henry Warner sent an e-mail to Fred Fitzsimons, and by way of further answer,
       Defendants aver that the March 19, 2007 e-mail is the best evidence of its contents and
       stated: "Please be advised that you have been removed as a director of Lab123, Inc.,
       effective March 17 by the shareholders."  The remaining allegations in paragraph 93 of
       the First Amended Complaint are mischaracterizations of fact to which no response is
       required; to the extent they are deemed allegations of fact, they are denied.

94.    Admit the allegation in the first clause of the first sentence of paragraph 94 of the First
       Amended Complaint that Henry Warner sent a March 19, 2007 e-mail to Plaintiff and
       Mary Rodino.  The allegation in the second clause of first sentence of paragraph 94 is a
       selective quote that mischaracterizes the March 19, 2007 e-mail, and is therefore denied,
       and by way of further answer, Defendants aver that the March 19, 2007 e-mail to Ms.
       Rodino and Plaintiff is the best evidence of its contents.  The remaining allegations in the
       first sentence and the allegations in the second sentence of paragraph 94 of the First
       Amended Complaint are conclusions of law and mischaracterizations of fact to which no
       response is required; to the extent they are deemed allegations of fact, they are denied.

95.     The allegations in paragraph 95 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

96.     Admit the allegation in the first sentence of paragraph 96 of the First Amended Complaint that Plaintiff requested that BMT and Biosafe Labs complete Plaintiff's director/officer background form.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence and the allegations in the second sentence of paragraph 96 of the First Amended Complaint.

97.     Admit the allegations in the first sentence of paragraph 97 of the First Amended Complaint that BMT and Biosafe Labs provided responses to Plaintiff's Director and Officer Form.  Deny the allegations in the second sentence of paragraph 97 of the First Amended Complaint.

98.     Admit the allegations in the first and second clauses of the only sentence of paragraph 98 of the First Amended Complaint that BMT and Biosafe Labs provided responses to Plaintiff's Director and Officer Form.  By way of further answer, Defendants aver that the responses to the Director and Officer Form are the best evidence of their contents. The remaining allegations in paragraph 98 of the First Amended Complaint are mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

99.     The allegation in the first clause of the only sentence of paragraph 99 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent it is deemed an allegation of fact, it is denied.  Admit the allegation in the third clause of the only sentence of paragraph 99 that Mr. Warner

had a non-employee relationship with The Ultimate Health Club. Deny the remaining allegations in paragraph 99.

100.   Admit the allegations in the first sentence of Paragraph 100 of the First Amended Complaint that that Henry Warner is the managing member of Renraw, LLC which is the majority shareholder of BMT; and admit that the Ultimate Health Club is a subsidiary of BMT. The remaining allegations in the first sentence and the allegations in the second sentence of paragraph 100 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

101.   The allegations in paragraph 101 of the First Amended Complaint are conclusions of law, mischaracterizations of fact and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

102.   Admit the allegation in the first clause of the first sentence of paragraph 102 of the First Amended Complaint that Lab123 entered into a Preferred Stock Purchase Agreement with Plaintiff, and by way of further answer, Defendants aver that the Preferred Stock Purchase Agreement is the best evidence of its contents. The remaining allegations in the first sentence of paragraph 102 of the First Amended Complaint are conclusion of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied. Admit the allegation in the second sentence of paragraph 102 of the First Amended Complaint that Plaintiff wired $2,000,000 to the escrow company on September 6, 2006; but deny knowledge and information sufficient to form a belief about the truth of the remaining allegations in the second sentence of paragraph 102 of the First Amended Complaint. Admit the

allegations in the third sentence of paragraph 102 of the First Amended Complaint. The allegations in the fourth sentence of paragraph 102 are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

103. The allegations in the first sentence of paragraph 103 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further answer, Defendants aver that Plaintiff was previously advised that the payment terms with Walgreens were "pay-on-scan." Admit the allegations in the second sentence of paragraph 103 of the First Amended Complaint that Mr. Trumpy sent Plaintiff a spreadsheet, and by way of further answer, Defendants aver that the September 21, 2006 spreadsheet is the best evidence of its contents. The remaining allegations in the second sentence, and the allegations in the third, fourth and fifth sentences of paragraph 103 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required, to the extent they are deemed allegations of fact, they are denied.

104. Denied.

105. Admit the allegations in the first sentence of paragraph 105 of the First Amended Complaint. The allegations in the second and third sentences of paragraph 105 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

106.  Admit the allegation in the first sentence of paragraph 106 of the First Amended
      Complaint, and by way of further answer, Defendants aver that the October 20, 2006
      letter is the best evidence of its form and contents.   Admit the allegations in the second
      sentence of paragraph 106 of the First Amended Complaint.  The allegations in the third
      sentence of the paragraph 106 of the First Amended Complaint are conclusions of law
      and mischaracterizations of fact to which no response is required; to the extent they are
      deemed allegations of fact, admit that Lab123 submitted a revised SB-2/A to the SEC on
      November 22, 2006, and by way of further answer, Defendants aver that the revised SB-
      2/A is the best evidence of its contents.  The remaining allegations in the third sentence
      of paragraph 106 of the First Amended Complaint are conclusions of law and
      mischaracterizations of fact to which no response is required; to the extent they are
      deemed allegations of fact, they are denied.  Admit the allegations in the fourth sentence
      of paragraph 106 of the First Amended Complaint.  The allegations of the fifth sentence
      of the First Amended Complaint are conclusions of law and mischaracterizations of fact
      to which no response is required; to the extent they are deemed allegations of fact, they
      are denied.

107.  Admit the allegations in the first sentence of paragraph 107 of the First Amended
      Complaint.  Deny the allegations of the second sentence of paragraph 107 of the First
      Amended Complaint for lack knowledge or information sufficient to form a belief about
      the truth of those allegations.  The remaining allegations in paragraph 107 of the First
      Amended Complaint are conclusions of law, mischaracterizations of fact and arguments
      to which no response is required; to the extent they are deemed allegations of fact, they
      are denied.

108.    Admit the allegations in the first, second and third sentences of paragraph 108 of the First Amended Complaint.  Deny the allegations in the fourth sentence of paragraph 108 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief about the truth of those allegations.

109.    Deny the allegations contained in the first sentence of paragraph 109 of the First Amended Complaint.  The allegations in the second sentence of paragraph 109 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the involuntary bankruptcy petition is the best evidence of its contents.

110.    Admit the allegations in the first sentence of paragraph 110 of the First Amended Complaint.  The allegations in the second sentence of paragraph 110 of the First Amended Complaint are mischaracterizations of fact and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.  Deny the allegation in the third sentence of paragraph 110 of the First Amended Complaint.  The allegations in the fourth sentence of paragraph 110 are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

111.    Admit the allegations in the second clause of the first sentence of paragraph 111 of the First Amended Complaint that plaintiff demanded rescission of the Preferred Stock Purchase Agreement and payment of $2,000,000, but deny that Plaintiff made this demand immediately.  The allegations in the second sentence of paragraph 111 are

conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

112.    The allegations in paragraph 112 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

113.    The allegations in paragraph 113 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

114.    The allegations in paragraph 114 of the First Amended Complaint are conclusions of law and mischaracterizations of fact to which no response is required; to the extent they are deemed allegations of fact, they are denied.

### AS AND FOR A RESPONSE TO COUNT I OF THE FIRST AMENDED COMPLAINT ALLEGING VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5 THEREUNDER

115.    Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

116.    The allegations in paragraph 116 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied in paragraph 116 of the First Amended Complaint are deemed allegations of fact, they are denied.

117.    The allegations in paragraph 117 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

118.    The allegations in paragraph 118 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver the Plaintiff itself established the price of Lab123's securities.

119.    The allegations in paragraph 119 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied for lack of knowledge or information sufficient to form a belief as to their truth.

120.    The allegations in paragraph 120 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

121.    The allegations in paragraph 121 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

122.    The allegations in paragraph 122 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

123.    The allegations in paragraph 123 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS AND FOR A RESPONSE TO COUNT II OF THE FIRST AMENDED COMPLAINT ALLEGING VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

124.   Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

125.   The allegations in paragraph 125 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

126.   The allegations in paragraph 126 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

127.   The allegations in paragraph 127 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

128.   The allegations in paragraph 128 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

129.   The allegations in paragraph 129 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

130.   The allegations in paragraph 130 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

131.   The allegations in paragraph 131 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

132.     The allegations in paragraph 132 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

133.     The allegations in paragraph 133 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

134.     The allegations in paragraph 134 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

## AS AND FOR A RESPONSE TO COUNT III
## <u>OF THE FIRST AMENDED COMPLAINT ALLEGING FRAUD</u>

135.     Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

136.     The allegations in paragraph 136 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

137.     The allegations in paragraph 137 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

138.     The allegations in paragraph 138 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations

of fact, they are denied for lack of knowledge or information sufficient to form a belief as to their truth.

139.   The allegations in paragraph 139 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

140.   The allegations in paragraph 140 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied..

141.   The allegations in paragraph 141 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

142.   The allegations in paragraph 142 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

143.   The allegations in paragraph 143 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

144.   The allegations in paragraph 144 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

145.   The allegations in paragraph 145 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further Answer,

Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed this action against Defendants Kent Connally and Jeremy J. Warner for lack of personal jurisdiction.

146. The allegations in paragraph 146 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied. By way of further Answer, Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed this action against Defendants Kent Connally and Jeremy J. Warner for lack of personal jurisdiction.

147. The allegations in paragraph 147 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS AND FOR THE DEFENDANTS' RESPONSE TO COUNT IV OF THE FIRST AMENDED COMPLAINTALLEGING NEGLIGENT MISREPRESENTATION**

148. Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

149. The allegations in paragraph 149 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

150. The allegations in paragraph 150 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

151.    The allegations in paragraph 151 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

152.    The allegations in paragraph 152 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

153.    The allegations in paragraph 153 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

154.    The allegations in paragraph 154 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

155.    The allegations in paragraph 155 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS AND FOR DEFENDANTS' RESPONSE TO COUNT V OF THE FIRST AMENDED COMPLAINT ALLEGING BREACH OF THE PURCHASE AGREEMENT**

156.    Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

157.    The allegations in paragraph 157 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, Defendants admit that plaintiff and Lab123 executed a Stock Purchase Agreement; otherwise denies.

158.    The allegations in paragraph 158 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

159.    The allegations in paragraph 159 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the Stock Purchase Agreement is the best evidence of its contents.

160.    Admit that the Stock Purchase Agreement contains sections 4.6 and 4.15, and by way of further answer, aver that the Stock Purchase Agreement is the best evidence of its contents.  Defendants further aver that the Opinion and Order dated July 25, 2008 dismissed plaintiff's breach of contract claim to the extent it alleges a breach of the obligation to provide accurate audited financial statements.

161.    The allegations in paragraph 161 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  Defendants further aver that the Opinion and Order dated July 25, 2008 dismissed plaintiff's breach of contract claim to the extent it alleges a breach of the obligation to provide accurate audited financial statements.

162.    The allegations in paragraph 162 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  Defendants further aver that the Opinion and Order dated July 25, 2008 dismissed plaintiff's breach of contract claim to the extent it alleges a breach of the obligation to provide accurate audited financial statements.

163.   Deny.  By way of further answer, Defendants aver that the Stock Purchase Agreement is the best evidence of its contents.

164.   Admit.  By way of further answer, Defendants aver that the allegations in paragraph 164 misquote the  Stock Purchase Agreement and that the Stock Purchase Agreement is the best evidence of its contents.

165.   Deny.  By way of further answer, Defendants aver that the allegations in paragraph 165 misquote NASD Rule 4200(a)(15) and that NASD Rule 4200(a)(15) is the best evidence of its contents.

166.   The allegations in paragraph 166 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

167.   The allegations in paragraph 167 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the Opinion and Order dated July 25, 2008 dismissed plaintiff's claim that Defendants breached paragraph 4.16 of the Stock Purchase Agreement.

168.   The allegations in paragraph 168 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By was of further answer, Defendants aver that the Opinion and Order dated July 25, 2008 dismissed plaintiff's claim that Defendants breached paragraph 4.16 of the Stock Purchase Agreement.

169.   The allegations in paragraph 169 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations

of fact, they are denied.  By was of further answer, Defendants aver that the Opinion and Order dismissed plaintiff's breach of contract claim insofar as it alleged a breach of the duty to provide audited financial statements and/or appoint independent directors within the meaning of NASD Rule 4200(a)(15).

170.     The allegations in paragraph 170 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

171.     The allegations in paragraph 170 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS AND FOR DEFENDANTS' RESPONSE TO COUNT VI OF THE FIRST AMENDED COMPLAINT ALLEGING BREACH OF THE LICENSING AGREEMENT**

172.     Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

173.     Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

174.     Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

175.     Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing

Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

176.    Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

177.    Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

178.    Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

179.    Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied in paragraph 179 are deemed factual allegations which require a response, they are denied.

180.    Deny.  Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

181. Deny. Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count VI of the First Amended Complaint alleging Breach of the Licensing Agreement and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

## AS AND FOR DEFENDANTS' RESPONSE TO COUNT VII OF THE FIRST AMENDED COMPLAINT ALLEGING UNJUST ENRICHMENT

182. Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs..

183. The allegations in paragraph 183 of the First Amended Complaint are conclusions of law and mischaracterizations of the facts to which no response is required; to the extent they are deemed allegations of facts; they are denied.

184. Deny the allegation in the first sentence of paragraph 184. Admit the allegation in the second sentence of paragraph 184 of the First Amended Complaint that Lab123 utilized $1,000,000 as partial payment in exchange for licenses pursuant to the Licensing Agreement with Biosafe Labs. By way of further answer, Defendants aver that the Licensing Agreement between Lab123 and Biosafe Labs is the best evidence of its content. Defendants deny the remaining allegations in the second sentence of paragraph 184 of the First Amended Complaint.

185. The allegations in paragraph 185 are conclusions of law and mischaracterizations of the Licensing Agreement to which no response is required; to the extent they are deemed allegations of fact, they are denied. By was of further answer, Defendants aver that the Licensing Agreement is the best evidence of its contents.

186.    The allegations in paragraph 186 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

187.    Deny.

188.    The allegations in paragraph 188 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

189.    The allegations in paragraph 189 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver that the Plaintiff's chairman and Chief Executive Officer, Andrew Worden, concealed his criminal record and SEC disciplinary history and thus plaintiff does not have "clean hands" and may not seek an equitable remedy.

190.    The allegations in paragraph 190 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.

191.    The allegations in paragraph 191 of the First Amended Complaint are conclusions of law and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

192.    The allegations in paragraph 192 of the First Amended Complaint are conclusions of law, mischaracterizations of fact and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

193.    The allegations in paragraph 193 of the First Amended Complaint are conclusions of law and argument to which no response is required; to the extent they are deemed allegations of fact, they are denied.  By way of further answer, Defendants aver the Plaintiff's managing director, Andrew Worden, concealed his criminal record and SEC disciplinary history and thus plaintiff does not have "clean hands" and may not seek an equitable remedy.

194.    The allegations in paragraph 194 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

195.    The allegations in paragraph 195 of the First Amended Complaint are conclusions of law and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS AND FOR DEFENDANTS' RESPONSE TO COUNT VIII OF THE FIRST AMENDED COMPLAINT ALLEGING CONVERSION**

196.    Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

197.    The allegations in paragraph 197 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

198.    The allegations in paragraph 198 of the First Amended Complaint are conclusions of law and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

199.    The allegations in paragraph 199 of the First Amended Complaint are conclusions of law and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

200.    The allegations in paragraph 200 of the First Amended Complaint are conclusions of law and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

201.    The allegations in paragraph 201 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

202.    The allegations in paragraph 202 of the First Amended Complaint are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS ANS FOR DEFENDANTS' RESPONSE TO COUNT IX OF THE FIRST AMENDED COMPLAINT ALLEGING VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

203.    Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs.

204.    Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

205.    Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer

Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

206. Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

207. Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

208. Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

209. Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

210. Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

211.    Defendants aver that the Opinion and Order of the Court dated July 25, 2008 dismissed Count IX of the First Amended Complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and thus no response is required; to the extent they are deemed allegations of fact, they are denied.

### AS AND FOR DEFENDANTS' RESPONSE TO COUNT X OF THE FIRST AMENDED COMPLAINT ALLEING VIOLATION OF THE ILLINOIS SECURITIES LAW OF 1953

212.    Defendants repeat and re-allege each and every response to every allegation set forth in the preceding paragraphs..

213.    The allegations in paragraph 213 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

214.    The allegations in paragraph 214 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

215.    The allegations in paragraph 215 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

216.    The allegations in paragraph 216 of the First Amended Complaint are conclusions of law and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

217.    The allegations in paragraph 217 of the First Amended Complaint are conclusions of law, mischaracterizations of fact, and arguments to which no response is required; to the extent they are deemed allegations of fact, they are denied.

**AS AND FOR DEFENDANTS' RESPONSE TO COUNT XI OF THE FIRST AMENDED
COMPLAINT ALLEGING FRAUD IN THE INDUCEMENT**

218.  Defendants repeat and re-allege each and every response to every allegation set forth in
the preceding paragraphs.

219.  The allegations in paragraph 219 of the First Amended Complaint are conclusions of law
and arguments to which no response is required; to the extent they are deemed allegations
of fact, they are denied.

220.  Deny.


**AS AND FOR DEFENDANTS' FIRST AFFIRMATIVE DEFENSE**

221.  The claims for relief alleged in the First Amended Complaint fail to properly state,
specify or allege, in whole or in part, a claim upon which relief may be granted.

**AS AND FOR DEFENDANTS' SECOND AFFIRMATIVE DEFENSE**

222.  To the extent that Plaintiff has been injured and/or damaged as alleged in the First
Amended Complaint, such injuries and/or damages were caused in whole or in part as a
result of the Plaintiff's own culpable conduct, which precludes and/or limits his ability to
recover herein.

**AS AND FOR DEFENDANTS' THIRD AFFIRMATIVE DEFENSE**

223.  Plaintiff is a self-proclaimed sophisticated investor within the meaning of Rule 501 of
Regulation D of the Securities Act of 1933.  Plaintiff drafted the terms of all oral
documents, including the Stock Purchase Agreement, controlled the terms on which it
made its investment in Lab123.  Plaintiff had ample opportunity to conduct due diligence
before executing the Stock Purchase Agreement.  As a sophisticated investor, plaintiff
had the ability to evaluate the risk of its investment and understood that execution of the

Stock Purchase Agreement involved a high degree of risk.  Whatever damages that were sustained by Plaintiff as a result of its transaction with Lab123 as alleged in the First Amended Complaint were the result of Plaintiff's assumption of risk, in realizing and knowing the risks involved with such a transaction, and that they assumed all the risks necessarily incidental to such an undertaking.

### AS AND FOR DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE

224.    Defendants have fully performed under the Preferred Stock Purchase Agreement.

### AS AND FOR DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE

225.    Defendants have fully performed under the License Agreement.

226.    To fulfill their obligations under the Preferred Stock Purchase Agreement, Defendants were forced to bear numerous cost, including the cost of legal and accounting services, salaries, and other overhead and administrative costs which they would not have incurred in the absence of the Stock Purchase Agreement between Lab123 and Barron such costs would otherwise not have been borne.

227.    Additionally, in connection with performing all of their obligations under the Preferred Stock Purchase Agreement, Defendants were required to compensate Lab123's officers, directors and staff, such costs would otherwise not have been borne.  Accordingly, to the extent Defendants have any liability under any theory whatsoever.

### AS AND FOR DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE

228.    Specifically, plaintiff concealed that its chairman, Chief Executive Officer, Andrew Barron Worden pled guilty to one count of wire fraud in connection with the sale of securities in violation of 18 U.S.C. § 1343 and that he agreed to the terms of a consent

injunction after being sued by the Securities Exchange Commission for violation

numerous provisions of the federal securities laws.

As a result of these material omissions, Plaintiff does not have "clean hands," and thus,

the doctrine of unclean hands precludes him from recovering on any equitable claims or

remedies.

229. This indictment was based upon Mr. Worden's scheme to defraud various broker-dealers

by representing to the broker dealers that he was a wealthy creditworthy securities trader

230. The doctrine of Unclean Hands bars Plaintiff from asserting and/or recovering damages

for some or all of the causes of action contained in the First Amended Complaint.

**AS AND FOR DEFENDANTS' SEVENTH AFFIRMATIVE DEFENSE**

231. Plaintiff's causes of action seeking recovery based on fraud theories are barred and must

be dismissed due to the lack of specificity required under Rule 9(b) of the Federal Rules

of Civil Procedure.

**AS AND FOR DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE**

232. Plaintiff has failed to mitigate its damages.

**AS AND FOR DEFENDANTS' NINTH AFFIRMATIVE DEFENSE**

233. There are valid, binding, integrated, and enforceable agreements governing the

relationships of the parties, the rights and obligations of the parties and the subject matter

and issues alleged in the First Amended Complaint.

234. Specifically, Lab123 entered into the Stock Purchase Agreement with Plaintiff.  The

Stock Purchase Agreement is a valid, binding, integrated and enforceable agreement that

governs all the rights and obligations of both Lab123 and Plaintiff with respect to the

facts and causes of action alleged in Plaintiff's First Amended Complaint.   The Stock

Purchase Agreement does not give Plaintiff any right to enforce the Licensing Agreement between Lab123 and Biosafe Labs.

235.    Additionally, Lab123 entered into a Licensing Agreement with Biosafe Labs, which is a valid, binding, integrated and enforceable agreement that governs the rights and obligations of Lab123 and Biosafe Labs.  By Opinion and Order dated July 25, 2008, the Court held that Plaintiff was not a third-party beneficiary to this Licensing Agreement.

236.    There is no dispute as to the validity or enforceability of the Preferred Stock Purchase Agreement.  There is likewise no dispute, among parties who have standing to dispute, the validity and enforceability of the Licensing Agreement.

237.    The existence of these valid and enforceable contracts bars Plaintiff's claims for fraud, unjust enrichment, conversion, and its common law fraud claims, its fraud in the inducement claims, and its statutory claims.

### AS AND FOR DEFENDANTS' TENTH AFFIRMATIVE DEFENSE

238.    Barron is not entitled to a jury trial because the Stock Purchase Agreement waived the parties' right to a jury trial.

### AS AND FOR DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF ALLEGATIONS COMMON TO ALL COUNTS

239.    Henry Warner was Chairman and CEO of BMT and Chairman of its subsidiary, Biosafe Labs, Inc.

240.    Both BMT and Biosafe are privately owned companies.

241.    In May 2006, Leonardo Zangani introduced Mr. Warner to Andrew Worden, the Chairman and CEO of Plaintiff, Barron Partners.

242.    During the initial negotiations between Henry Warner and Andrew Worden concerning Barron Partners' investment, Mr. Worden insisted that Lab123 be formed as a public company.

243.    Mr. Warner informed Mr. Worden that he had no prior experience in the creation, management or operation of a public company.  Indeed, prior to the creation of Lab123, Mr. Warner had no experience in the creation, management or operation of a public company.

244.    Mr. Worden assured Mr. Warner that Plaintiff was an expert in taking companies public and that Plaintiff would assist defendants in the creation of a publicly traded company.

245.    By e-mail dated May 11, 2006, Mr. Worden advised Mr. Warner to examine Plaintiff's website and provided him with a link to that website, www.barronpartners.com. See Ex. 1.

246.    Among other things, Plaintiff's website claims that Plaintiff "is a private investment fund specializing in micro-cap companies" and has "approximately $200 million in assets." See Ex. 1 at p.2.

247.    In addition, Plaintiff's website also states that Plaintiff "assists and invests in private companies that commit to immediately go public."  Plaintiff's website further states that it helps companies:

> by introducing them to proven professionals including lawyers and accountants to navigate through the going public process cost effectively and painlessly.

See Ex. 1 at p 2.

248. Plaintiff's website also claims that Andrew Barron Worden, Plaintiff's Chairman and Chief Executive Officer, has "over 20 years of experience founding, managing, planning, analyzing, and investing with public and private companies." Ex. 1 at p.4.

249. However, Plaintiff's website does not disclose that Mr. Worden pled guilty to a one count information charging him with wire fraud in connection with the sale of securities in violation of 18 U.S.C. §1343. Ex. 3 at p.7. Specifically, Mr. Worden pled guilty to using interstate wire communications to engage in an elaborate scheme of "free-riding" in which he purported to purchase and sell securities without putting his own funds at risk. Ex. 3.

250. Likewise, Plaintiff's website does not disclose that the Securities and Exchange Commission ("SEC") brought a civil enforcement action against Mr. Worden which alleged that Mr. Worden violated numerous provisions of the federal securities law; or that Mr. Worden entered into a consent decree which required Mr. Worden to disgorge $673,432.66 to resolve that civil enforcement action. Ex. 4.

251. Plaintiff never informed Defendants of Mr. Worden's guilty plea.

252. Plaintiff never informed Defendants that the SEC brought a civil enforcement action against Mr. Worden.

253. Defendants did not learn of Mr. Worden's criminal record or SEC litigation until after Plaintiff commenced this lawsuit.

254. Given Defendants' inexperience in creating, managing and operating a public company, Defendants relied on Plaintiff's representation that it was an expert in taking companies public.

255. Defendants thus relied upon Plaintiff to assist it in going public.

256.   Indeed, Defendants relied upon Plaintiff to identify experts who could assist in creating Lab123 as a publicly traded company.

257.   In fact, Plaintiff introduced Mr. Warner to the law firm of Guzov Ofsink, LLC, and based upon Plaintiff's recommendation, Mr. Warner retained Guzov Ofsink to represent Lab123 in the transaction with Plaintiff.

258.   Plaintiff also introduced Mr. Warner to Marcum & Kliegman, LLP, the auditors who reviewed Lab123's financial statements.

259.   Plaintiff's promises to assist Defendants in creating Lab123 and taking it public induced Defendants to create a publicly traded company.   Accordingly, as a result of Plaintiff's promises, representations, and inducements, Plaintiff created a special duty of care which obligated Plaintiff to deal with Defendants, fairly, honestly, and candidly during the transaction.

## COUNT I:  FRAUDULENT INDCUMENT

260.   Defendants re-allege and incorporate the allegations contained in paragraphs 239 through 259 above as if fully set forth herein.

261.   Mr. Worden's criminal conviction and SEC disciplinary history are clearly facts that are material to evaluating any transaction with Plaintiff.   Indeed, such facts would be material to evaluating any investment.  See Emergent Capital Inv. Mgmt. LLC v. Stonepath Group Inc., 343 F.3d 189, 192, 196 (2d Cir. 2003).  Furthermore, these facts are material to evaluating any transaction that contemplates the creation of a publicly traded company

262.   Indeed, Plaintiff's own actions during its due diligence process demonstrate that Plaintiff itself believed that if a director or officer has a criminal record and/or litigation and

investigation history, such facts would be material to evaluating the risks and benefits of the transaction.

263.   As part of its due diligence process, in June 2006, Plaintiff asked Defendants to complete Plaintiff's Form DOB: Director/Officer Background ("Form DOB"), which sought information about the criminal records, litigation history and investigation history of the prospective officers and directors of Lab123. <u>See</u> Ex. 5.

264.   Section 8 of Plaintiff's Form DOB required all directors and officers to disclose the details of any "Litigation, Censure, Sanction" and requested the responder to:

> Provide complete detail of any litigation, <u>civil or criminal</u>; <u>past or present</u>; <u>settled or unsettled</u>; <u>resolved or unresolved</u> in any jurisdiction indicating the status of such cases, any censure or sanctions you have received or license revocation from any professional group or licensing authority….Please make sure to include any <u>personal or business</u> legal proceedings or bankruptcy proceedings in which you have been or may have been named. IF NONE, YOU MUST WRITE 'NONE.'"

> Ex. 5 at p. 6.

265.   Additionally, Section 9 of Plaintiff's Form DOB required all officers and directors to disclose the details of their "Employment, Business and Investment history," and requested the responder to answer the following question:

> To your knowledge has any business organization, its officers, directors or general partners of which you are/were an officer, director or general partner or in which you have or had a controlling interest (for these purposes, defined as owning a larger percentage than any other shareholder) been subject to a criminal investigation or prosecution in any jurisdiction (whether or not convicted of a crime) during the period of and five years following your employment, investment or affiliation? If so, indicate all relevant details including whether you were personally convicted, names of all legal representatives, time of action, court, case number, jurisdiction, and reason for such action. IF NONE, YOU MUST WRITE "NONE".

Ex. 5. at p. 6.

266.   Likewise, Section 10 of Plaintiff's Form DOB required all directors and officers to

disclose the details of their "Personal Criminal History," and requested the responder to

answer the following question:

> Have you ever been charged or convicted of any crime in any
> jurisdiction other than in response to Section 9?  If so, indicate all
> relevant details including names of all legal representatives, time
> of action, court, case number, jurisdiction, and reason for such
> action.  IF NONE YOU MUST WRITE "NONE".

Ex. 5 at p. 6.

267.   In addition, Section 11 of Plaintiff's Form DOB requires the officers and directors to

disclose "Indictments and Outstanding Warrants," and requested that the responder

answer the following question:

> To your knowledge are you or any other executive, director or
> general partner of your current employer/entity the subject of any
> indictment, warrant, arrest, questioning, hearing or judgment
> including civil arrest warrants in any jurisdiction?  If so, indicate
> all relevant details including court, judge, attorney, agency,
> offense, jurisdiction, time of action, reason for such action and any
> other relevant details.  IF NONE, YOU MUST WRITE "NONE".

Ex. 5 at p. 7.

268.   Moreover, in Section 13 of Plaintiff's Form DOB requires the officers and directors to

provide "Employment, Business, and Investment Investigation History," and requested

that the responder answer the following question:

> Has any business organization of which you are/were an officer,
> director or general partner or in which you have or had a
> controlling interest (for these purposes, defined as owning a larger
> percentage than any other shareholder) been subject to any
> investigation by, or been a party to any litigation with, any
> international, federal, state or local agency in any jurisdiction
> during the period of an five years following you reemployment,
> investment or affiliation?  If so, indicate all relevant details

including names of all legal representatives, time of action, court, case number, jurisdiction, and reason for such action.  IF NONE, YOU MUST WRITE "NONE".

Ex. 5 at p. 7.

269.    In sum, Plaintiff's standard due diligence documents required all prospective directors and officers of Lab123 to provide detailed responses to five separate questions regarding their criminal records, civil litigation history, and investigative history.  Plaintiff's standard due diligence documents thus demonstrate that Plaintiff believed the existence of any criminal record or civil litigation or investigative history was a material fact that needed to be disclosed and evaluated before Plaintiff decided to execute any transaction or make any investment.

270.    Despite the fact that Plaintiff itself asked extensive questions about the criminal, civil litigation, and investigative history of the prospective directors and officers of Lab123, Plaintiff did not disclose Mr. Worden's own criminal record or the fact that he had been sued by the SEC for civil violations of the Federal securities laws at any time during the negotiation of the Stock Purchase Agreement or at any time thereafter.

271.    Given the number of questions that Plaintiff asked regarding the director's and officer's criminal record, civil litigation, and investigative history, Plaintiff's failure to disclose Worden's own criminal record and litigation history was not a mistake, accident, or oversight.

272.    Plaintiff concealed the material facts concerning Worden's criminal history and litigation with the SEC because Plaintiff knew that Defendants would be reluctant to execute a transaction with Plaintiff that contemplated the creation of a publicly traded company.

273.    By failing to disclose Worden's criminal record and the fact that he had been sued by the SEC for civil violations of the Federal securities laws, Plaintiff deprived Defendants of the opportunity to evaluate whether Worden's past record impacted his truthfulness and integrity and deprived Defendants of the opportunity to fully evaluate the risks and bona fides of the transaction contemplated by the Stock Purchase Agreement.

274.    Plaintiffs fraudulently induced Lab123 to execute the Stock Purchase Agreement by failing to disclose the material facts concerning Worden's criminal history and his litigation with the SEC.

275.    Indeed, Lab123 would not have executed the Stock Purchase Agreement if Defendants had known about Worden's criminal history or the fact that he had been sued by the SEC and agreed to a consent injunction.

276.    As a result of executing the Stock Purchase Agreement, Defendants changed position to fulfill their obligations under the Stock Purchase Agreement and, consequently, incurred substantial expenses.  These expenses include, but are not limited to, the cost of the legal and administrative fees associated with incorporating Lab123, the costs of the legal, accounting, and administrative fees associated with creating and filing the necessary paperwork to register Lab123 as a public traded company, the costs of a hiring and paying all Lab123 employees, agents, consultants, officers, and directors, and any and all business expenses incurred by Lab123, including but not limited to all rent, advertising, business development expenses, and ongoing business and administrative overhead expenses.

277.    Accordingly, as a result of Plaintiff's wrongful conduct and its fraudulent efforts to conceal material facts to induce Lab123 to execute the Stock Purchase Agreement,

Defendants suffered substantial damages, in excess of $1,000,000, in an amount to be determined at trial.

## COUNT II:  NEGLIGENT MISREPRESENTATION

278. Defendants reallege and incorporate the allegations contained in in paragraphs 239 through 277 above as if fully set forth herein.

279. During the negotiations leading to the execution of the Stock Purchase Agreement, Plaintiff repeatedly touted its special expertise and experience in taking private companies public.

280. Indeed, Plaintiff made repeated representations regarding its special and unique expertise in assisting small companies in going public and Mr. Worden's experience and specialized expertise.  Furthermore, Plaintiff identified lawyers and accountants to assist in the process of creating Lab123 and taking it public.

281. If Plaintiff had not made these representations, Defendants would not have agreed to create a publicly traded company, known as Lab 123 and Lab123 would not have executed the Stock Purchase Agreement.

282. As a result of Plaintiff's specialized expertise and its selection of professionals to assist in the creation of Lab123 as a publicly traded entity, Plaintiff held a position of special trust and confidence with Defendants.

283. The special relationship between Plaintiff and Defendants, and Plaintiff's purported experience was a significant factor in Defendants' decision to create a publicly traded company, known as Lab123 and Lab123's decision to execute the Preferred Stock Purchase Agreement.

284.    Defendants relied upon Plaintiff to assist in navigating the process of creating a publicly traded company, registering that publicly traded company with the SEC, and offering share of that company to the public.

285.    As a result of Plaintiff's representations concerning its expertise and the expertise and experience of its CEO, Andrew Worden, Defendants also relied on Plaintiff to guide them as they learned about the requirements of operating and managing a publicly traded company.

286.    Given Defendants' inexperience in creating, managing and operating a public company, it was reasonable for Defendants to rely on Plaintiff's representation that it was an expert in taking companies public and that Plaintiff would fulfill its promise to make the process of going public "effective" and "painless."

287.    Defendants further relied on "professionals," selected by Barron, including Guzov Ofsink and Marcum & Kliegman, to assist in taking Lab123 public.

288.    As a result of the special relationship of confidence and trust between Plaintiff and Defendants, Plaintiff owed a duty to Defendants to disclose Mr. Worden's criminal record and the fact that he had been sued by the SEC for civil violations of the Federal securities laws.

289.    By failing to disclose Worden's criminal record and SEC civil enforcement history, Plaintiff deprived Defendants of a meaningful opportunity to evaluate whether Worden's past record impacted his truthfulness and integrity and also deprived Defendants of the opportunity to fully evaluate the risks and bona fides of the transaction contemplated by the Stock Purchase Agreement.   Likewise, by failing to disclose Mr. Worden's criminal record and SEC civil enforcement history, Plaintiff deprived Defendants of a meaningful

opportunity to evaluate the extent to which they could rely upon Plaintiff to fulfill its duty to assist in creating and managing a publicly traded company.

290.    Indeed, Lab123 would not have executed the Stock Purchase Agreement if Defendants had known about Worden's criminal history or the fact that he had been sued by the SEC and agreed to a consent injunction.

291.    As a result of executing the Stock Purchase Agreement, Defendants changed position to fulfill their obligations under the Stock Purchase Agreement and, consequently, incurred substantial expenses.  These expenses include, but are not limited to, the cost of the legal and administrative fees associated with incorporating Lab123, the costs of the legal, accounting, and administrative fees associated with creating and filing the necessary paperwork to register Lab123 as a public traded company, the costs of a hiring and paying all Lab123 employees, agents, consultants, officers, and directors, and any and all business expenses incurred by Lab123, including but not limited to all rent, advertising, business development expenses, and ongoing business and administrative overhead expenses.

292.    Upon information and belief, Plaintiff's failure to disclose Mr. Worden's criminal record history and SEC litigation history was an omission that also caused a public injury insofar as it caused the creation of a publicly traded company.

293.    Accordingly, as a result of Plaintiff's wrongful conduct and its fraudulent efforts to conceal material facts to induce Lab123 to execute the Stock Purchase Agreement, Defendants suffered substantial damages, in excess of $1,000,000, in an amount to be determined at trial and is also entitled to punitive damages.

WHEREFORE, Defendants respectfully request the Court to:

      A.  Dismiss with prejudice the First Amended Complaint in its entirety, and enter judgment in favor of Defendants;

      B.  Award actual and punitive damages in favor of Defendants and against Plaintiff in an amount to be determined at trial;

      C.  Award Defendants attorneys' fees and costs and such other and further relief as the Court deems just and proper.

Dated: Woodbury, New York
      August 27, 2008

      KAUFMAN DOLOWICH & VOLUCK LLP
      Attorneys for Defendants
      LAB123, INC., BIOSAFE MEDICAL
      TECHNOLOGIES, INC., BIOSAFE
      LABORATORIES, INC., HENRY A. WARNER,
      and ROBERT TRUMPY

      /s/ Janene M. Marasciullo
      Janene M. Marasciullo (JMM-0007)
      Todd D. Kremin (TK-0102)
      135 Crossways Park Drive, Suite 201
      Woodbury, NY 11797
      (516) 681-1100
      (516) 681-1101 (fax)
      jmarasciullo@kdvlaw.com

ND: 4838-0358-7586, v. 1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2008, a true and correct copy of DEFENDANT'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS was filed electronically with the court using the CM/ECF system, which sent notification to the following parties:

Barry Richard Lax
The Lax Law Firm
444 Park Avenue South, 11th Floor
New York, NY 10016


/s/ Janene M. Marasciullo
Janene M. Marasciullo (JMM-0007)

ND: 4837-7495-1938, v. 1

# EXHIBIT LIST

| **EXHIBIT** | **DESCRIPTION** |
|---|---|
| 1 | May 11, 2006 e-mail from Worden to Warner and Excerpts from Barron Partner's Website. |
| 2 | May 11, 2006 e-mail from Zangani to Worden introducing Worden to Biosafe. |
| 3 | U. S. v. Worden, No. S1 94 Cr. 469, Information and Docket Entry. |
| 4 | SEC v. Andrew Worden, No. 90-CIV-1790, Order and Consent Injunction |
| 5 | June 13, 2006 e-mail from Matthew Samuel to Robert Trumpy, and Barron's Form DOB. |

ND: 4853-0095-7698, v. 1

**From:** Andrew Worden [abw@barronpartners.com]
**Sent:** Thursday, May 11, 2006 3:24 PM
**To:** Henry Warner
**Cc:** leonardo@zangani.com
**Attachments:** Barron Partners Performance - 52 months through 04.30.06.pdf

Hank,

It was nice talking today.

Your company is well referred and exciting to us.

Some local references to call:

One of our top 3 investors:

Bob Steel

Bob Steel
KA Steel Chemical
630-257-3900 x 2294

Our top lawyer:

John H. Heuberger
DLA Piper Rudnick
  Gray Cary US LLP
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601
E-mail:    john.heuberger@dlapiper.com
Telephone: 312-368-4014
Direct Fax: 312-630-5322
Cell No.:    847-309-2341

Please review our web site at: www.barronpartners.com . Please read the testimonials if you have a chance.

We look forward to a continued dialog.

Best,

Andrew Barron Worden
Managing Partner
Barron Partners LP
730 Fifth Avenue, 9th Floor
New York NY 10019
tel 212-659-7790
Fax 646-607-2223
cell 917-854-0036
abw@barronpartners.com

The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

EXHIBIT 1    page 1

# BARRON PARTNERS LP

中文

Home

Company

Investment Focus

Investment Types

Benefits
> Investment Structure
> Post Investment
> Competitive Analysis

Testimonials

Contact Us

**Barron Partners LP** is a private investment fund specializing in micro-cap companies. Barron has approximately $200 million in assets, a significant portion of which is cash.

*Relentless Pursuit of Excellence*

## Private Company

Barron assets and invests in private companies that commit to immediately go public. We help these companies by introducing them to proven professionals including lawyers and accountants to navigate through the going public process cost effectively and painlessly. Barron investments in Private Companies are typically allocated for:

- Funding of rapid internal growth
- Recapitalizations and balance sheet restructurings
- Acquisitions or mergers, including reverse mergers that result in publicly traded shares
- Acquisitions of companies or interests therein from shareholders, financial owners, or strategic owners

All investment targets must meet the following criteria:

- Positive cash flow as measured by run-rate EBITDA, either through acquisition or growth
- Strong shareholder-oriented management and board of directors
- Strong corporate governance
- Strong organic revenue growth historically or currently and in the future
- Competitive advantage
- Excitement and uniqueness of the business
- High profit margins
- High return on capital

Privacy and Legal Information    © Copyright 2007 Barron Partners LP. All rights reserved.

EXHIBIT 1    page 2



# BARRON
## PARTNERS LP

Home

Company

Investment Focus

Investment Types

**Benefits**

> Investment Structure

> Post Investment

> Competitive Analysis

Testimonials

Contact Us

**Barron Partners LP** is a private investment fund specializing in micro-cap companies. Barron has approximately $200 million in assets, a significant portion of which is cash.

*Relentless Pursuit of Excellence*

## Competitive Analysis

**What Barron Partners Does Do**

- Strong only positions, aligning interests with other shareholders and the fund's management
- No use of leverage within the fund, reducing the risk profile of the company
- Full due diligence process

- Comfortable as a long term investor
- Numerous relationships with follow-on investors, prime brokers, sell-side partners, and many other figures on Wall Street
- Preferred exit through block trades
- Investment structure to provide additional capital to company in a timely manner at an increasing share price

## What Barron Partners Does Not Do

- Use of short positions, associated equity lines and unstable derivative structures
- Full leverage, requiring them to margin requirements and external market issues
- Variable rate or "Death Spiral" transactions which push share prices lower

Copyright © 2006 Barron Partners LP. All rights reserved.



EXHIBIT 1        page 3

Page 1 of 1

中文



**BARRON** PARTNERS LP

**Home**

**Company**
> **Mission**
> **Team Members**

**Investment Focus**

**Investment Types**

**Benefits**

**Testimonials**

**Contact Us**

**Barron Partners LP** is a private investment fund specializing in micro-cap companies. Barron has approximately $200 million in assets, a significant portion of which is cash.

*Relentless Pursuit of Excellence*

## Team Members



**Andrew Barron Worden**, *Chairman & CEO*

Mr. Worden has over 20 years of experience, including managing, planning, analyzing and investing with public and private companies. Mr. Worden graduated from Harvard University with a BA in Physical Sciences. He also studied engineering and entrepreneurship at MIT and finance and marketing at MIT's Sloan School of Management. Mr. Worden oversees Barron's existing portfolio, originates new investments and manages all investment activities.

**Back**

Important Legal Information     Copyright 2008 Barron Partners LP. All rights reserved.

EXHIBIT 1

page 4

Barron Partners LP - Team Members

中文

# BARRON
PARTNERS LP

**Home**

**Company**

**Investment Focus**

> Philosophy
> Industries
> Recent Investments

**Investment Types**

**Benefits**

**Testimonials**

**Contact Us**

**Barron Partners LP** is a private investment fund specializing in micro-cap companies. Barron has approximately $200 million in assets, a significant portion of which is cash.

*Relentless Pursuit of Excellence*

## Team Members



**Matthew C. T. Samuel,** *Analyst*

Prior to joining Barron Partners in 2006, Matt worked at Niagara Investment Corporation, dealing primarily in venture capital and real estate. Matt graduated from the A.B. Freeman School of Business at Tulane University with a Masters of Finance in 2005, and a Bachelors of Science in Management in 2004. At Barron, Matt evaluates open market and PIPE opportunities, performs deal origination, due diligence, and assists the portfolio managers.

◄ Back

Important Legal Information    Copyright 2006 Barron Partners LP. All rights reserved.

EXHIBIT 1

page 5

From:
Sent:
To:
Cc:
Subject:

Leonardo Zangani [leonardo@zangani.com]
Wednesday, May 10, 2006 10:42 AM
abw@barronpartners.com
Henry Warner
Biosafe

Dear Andrew,
please check www.ebiosafe.com
Hank company is still private and is profitable.
At the present moment Hank has been approached to merge his operation in a shell.
Before he does this I suggested that he talk to you.
Mark can reach Hank at 847 234 8111.
Keep me posted.
ciao
--
Leonardo G. Zangani
Zangani Investor Community
908-788-9660 x926
www.zangani.com

1

Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                          :

       -v-                                    :

ANDREW WORDEN,                                    :          INFORMATION

          Defendant.                          :          S1 94 Cr. 469 (LAP)

- - - - - - - - - - - - - - - - - -x

## COUNT ONE

The United States Attorney charges:

### INTRODUCTION

1. At various times relevant to this Information, ANDREW WORDEN, the defendant, maintained business offices at 730 Fifth Avenue and 50 West 57th Street in New York, New York.

2. At various times relevant to this Information, ANDREW WORDEN, the defendant, maintained at least 90 brokerage accounts with at least 54 broker-dealers located in New York City and throughout the United States. WORDEN placed orders with these broker-dealers to trade securities in these various accounts by telephone from his business offices in New York City.

3. Regulation T, promulgated by the United States Securities and Exchange Commission (Title 12, Code of Federal Regulations, Section 220), allows a stockbroker to purchase a security for a customer, even though the customer has not provided the stockbroker with funds sufficient to cover that purchase, if the stockbroker in good faith relies on an agreement with the customer that the customer will promptly make full cash payment for

EXHIBIT 3                                              page 1

the security, and does not contemplate selling the security prior to making that payment.

## THE SCHEME TO DEFRAUD

4. From in or about December 1988, to in or about September 1989, in the Southern District of New York and elsewhere, ANDREW WORDEN, the defendant, unlawfully, wilfully, and knowingly did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

5. It was a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, falsely portrayed himself to various broker-dealers as a wealthy and creditworthy securities trader with large amounts of funds at his disposal for trading. In order to bolster this false and misleading portrayal, WORDEN opened brokerage accounts in the names, among others, of various companies, including Convergence Corporation, Park South Limited Partnership, Worden Management Corporation, Worden Trust Company, and International Asset Management Corporation, and in certain instances, fraudulently misrepresented the net worth and income of these companies.

6. It was further a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, fraudulently induced broker-dealers to purchase securities on his behalf, without having previously provided the broker-dealers with funds sufficient to cover those purchases, by making false and fraudulent misrepresen-

2

EXHIBIT 3

tations about his ability and intentions to pay for the securities he purchased.

7.   It was further a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, induced broker-dealers to make securities purchases on his behalf by making false promises to wire funds into their accounts to pay for the purchases, and by providing the broker-dealers with checks drawn on a bank account with insufficient funds.

8.   It was further a part of the scheme and artifice to defraud that, in many of the instances where the value of the securities purchased by WORDEN increased prior to settlement date (which for purchases of stock was five business days after the trade date), WORDEN instructed the broker-dealer to sell the securities and to send him, or to credit his account with, the difference between the purchase price and the sale price. In this manner, WORDEN was able to "free-ride" on the funds and credits of the broker-dealers by profiting from the increase in value of the securities without paying for those securities, placing his own funds at risk, or intending to pay or place his own funds at risk.

9.   It was further a part of the scheme and artifice to defraud that, in those instances where the value of the securities purchased by WORDEN decreased or remained unchanged prior to settlement date, WORDEN failed to pay for his securities purchases, forcing the broker-dealer to liquidate the securities position. Those broker-dealers holding securities positions that had decreased in value following the trade date sustained losses after

3

EXHIBIT 3

selling off the positions, which WORDEN failed fully to reimburse. Instead, in order to continue the cycle of "free-riding," WORDEN opened new brokerage accounts with other broker-dealers. WORDEN failed to disclose to these new broker-dealers that he had bounced checks to other broker-dealers and that he had debit balances with other broker-dealers. Rather, WORDEN once again falsely portrayed himself to the new broker-dealers as a wealthy and creditworthy securities trader.

10. It was further a part of the scheme and artifice to defraud that ANDREW WORDEN, the defendant, purchased and sold securities with various broker dealers which caused them to sustain losses as set forth in the table below:

| Brokerage Account and Dates | Approximate Value of the Securities Purchased or Sold by the Defendant | Broker-Dealer's Approximate Loss on Liquidation |
|---|---|---|
| Stuart-James & Co. (January 1989 - March 1989) | $5212.81 | $2410.00 |
| Nelson Securities (April 1989 - May 1989) | $27,635.00 | $5445.47 |
| Equitable Securities (April 1989 - June 1989) | $113,575.00 | $15,725.00 |
| J.W. Gant & Assoc. (May 1989) | $8115.00 | $3927.50 |
| Allegiance Securities (April 1989 - July 1989) | $55,162.50 | $11,655.84 |

4

EXHIBIT 3    page 4

| Brokerage Account and Dates | Approximate Value of the Securities Purchased or Sold by the Defendant | Broker-Dealer's Approximate Loss on Liquidation |
|---|---|---|
| Grey, Randolf, & Abbott (May 1989 – June 1989) | $49,692.50 | $8930.00 |
| Gulfstream Financial (May 1989 – June 1989) | $151,415.00 | $25,152.00 |
| Price, Raffel, Browne, Soll & Rowe (June 1989) | $48,992.00 | $19,984.98 |
| John G. Kinnard (June 1989) | $84,175.00 | $20,425.00 |
| McDaniel, Lewis & Co. (June 1989) | $58,297.50 | $725.00 |
| Branch, Cabell & Co. (June 1989 – September 1989) | $41,125.00 | $4570.00 |
| Advest, Inc. (April 1989 – June 1989) | $60,900.00 | $16,550.00 |
| Huberman Securities (December 1988 – April 1989) | $32,220.00 | $5,627.00 |
| Neidiger, Tucker, Bruner, Inc. (December 1988 – June 1989) | $108,648.53 | $3,006.25 |
| R.J. Steichen & Co. (March 1989 – May 1989) | $83,795.25 | $9,432.49 |
| Schneider Securities (May 1989 – June 1989) | $33,065.25 | $2911.75 |
| Wessels, Arnold & Henderson (May 1989 – June 1989) | $200,750.00 | $20,500.00 |
| Alex Brown & Sons (June 1989) | $65,800.00 | $6,236.00 |

5

EXHIBIT 3

page 5

| Brokerage Account and Dates | Approximate Value of the Securities Purchased or Sold by the Defendant | Broker-Dealer's Approximate Loss on Liquidation |
|---|---|---|
| Newhard, Cook & Co. (June 1989 – July 1989) | $27,189.25 | $20,628.50 |
| Henry F. Swift & Co. (June 1989 – August 1989) | $145,332.00 | $11,725.42 |
| First Albany Corp. (March 1989 – June 1989) | $40,246.00 | $1,281.00 |
| Interstate/Johnson Lane Corp. (April 1989 – May 1989) | $15,273.00 | $6,273.00 |

11. On or about June 13, 1989, in the Southern District of New York and elsewhere, ANDREW WORDEN, the defendant, unlawfully, wilfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as set forth in paragraphs 5 through 10 above, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, to wit, a telephone call from WORDEN in New York, New York, to a representative of Branch, Cabell & Co. in Richmond, Virginia, relating to the purchase of 3500 shares of the common stock of Trimedyne, Inc.

(Title 18, United States Code, Section 1343.)

*Mary Jo White*

MARY JO WHITE
United States Attorney

6

EXHIBIT 3

page 6

30, 1995. Filed Waiver of Indictment and superseding Information. Deft. pres w/atty Lawrence Goldman & Elizabeth Johnson. Asst. John McCormick & Crt. Rptr present. Deft arraigned on Superceding Information and pleads guilty as charged. Court accepts the plea. PSI ordered. Sentence set for 5/11/95 @ 4:00. Deft. cont'd released on bail previously set.

Richard [illegible]

EXHIBIT 3

page 7

Place
in
File

Ct. Ex 1   8/5/9

Carmen J. Lawrence
Regional Director
Jon Gautier (JG-6595)
SECURITIES AND EXCHANGE COMMISSION
7 World Trade Center, 13th Floor
New York, New York  10048
(212) 748-8370

U. S. DISTRICT COURT
FILED
AUG 6 1997
S. D. OF N. Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
                                         :
SECURITIES AND EXCHANGE COMMISSION,      :
                                         :    90 Civ. 1790 (  )
                        Plaintiff,       :
                                         :    PART I
        -against-                        :
                                         :    PROPOSED ORDER
                                         :    REOPENING ACTION,
                                         :    APPROVING PLAN OF
ANDREW B. WORDEN,                        :    DISTRIBUTION, AND
                        Defendant.       :    APPOINTING CLAIMS
                                         :    ADMINISTRATOR
- - - - - - - - - - - - - - - - - - - - x

        Plaintiff Securities and Exchange Commission (the
"Commission") having commenced this action by filing its
Complaint on March 15, 1990 and its Amended Complaint on December
26, 1991; the Court having entered, upon the consent of defendant
Andrew B. Worden ("Worden"), a Final Consent Judgment of
Permanent Injunction and Other Relief Against Andrew B. Worden
("Final Judgment") on May 20, 1992; the Final Judgment having
ordered Worden to disgorge $673,432.66, representing alleged
profits, losses avoided, and assets misappropriated as a result
of the unlawful conduct alleged in the Amended Complaint and
prejudgment interest thereon; Worden having made payments into
the registry of the Court, pursuant to Paragraphs V. and VI. of
the Final Judgment; those funds, plus interest accruing thereon,
having been held for distribution, after payment of taxes on the
interest and administrative fees and deduction of the fee

MICROFILM

-12:00 PM

AUG - 6 1997

EXHIBIT 4

*It IS HEREBY ORDERED, ADJUDGED AND DECREED, that this case is reopened.*

*DAB 8/5/97*

authorized by Rule 67.1 of the Local Civil Rules of the Southern

District of New York, "to the persons/entities allegedly harmed

by defendant Worden's unlawful activities . . . pursuant to a

plan of distribution to be submitted by the Commission and

approved by the Court" [Final Judgment par. VI. (2)]; the

Commission having submitted a *revised* proposed plan of distribution of *DAB*

the disgorged funds (the "Plan of Distribution") upon notice to *8/5/97*

Worden; and the Commission having applied to the Court, for the

appointment of a Claims Administrator to carry out the Plan of

Distribution; the Commission having recommended Eliot Goldstein,

Esq. of Altschuler, Melvoin and Glasser LLP to serve as Claims

Administrator; no objection having been heard and good cause

appearing:

IT IS ~~HEREBY~~ *FURTHER* ORDERED, ADJUDGED AND DECREED, that the *revised proposed* Plan of

Distribution is approved. *DAB*

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Eliot

Goldstein, Esq. of Altschuler, Melvoin and Glasser LLP shall

serve as Claims Administrator to carry out the Plan of

Distribution.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that, at the

request of the Commission, the Claims Administrator may at any

time be removed by the Court and replaced with a successor

recommended to the Court by the Commission. In the event that

the Claims Administrator decides to resign, he or she shall first

give 60 days written notice to the Commission, Worden and the

Court of his or her intention, and such resignation shall not

2

become effective until the Court has appointed a successor who has accepted such appointment in writing.

SO ORDERED:

Dated:  New York, New York, August 5, 1997

Deborah A. Batts
UNITED STATES DISTRICT JUDGE

To:  Jon Gautier
     United States Securities and Exchange Commission
     7 World Trade Center, 13th Floor
     New York, New York  10048

     Marc D. Powers, Esq.
     Parker Duryee Rosoff & Haft, P.C.
     529 Fifth Avenue
     New York, New York  10017

RECEIVED CHECK NO. 455028 DATED 10/16/97

IN THE AMOUNT OF $761,619.08

PAYABLE TO WOLDEN SETTLEMENT FUND

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | 90 Civ. 1790 (BBS) DNE) |
| Plaintiff, | |
| v. | CONSENT TO ENTRY |
| ANDREW B. WORDEN | OF PRELIMINARY INJUNCTION AGAINST DEFENDANT WORDEN |
| Defendant. | |

Defendant Andrew B. Worden ("Worden"), having been advised
by counsel, hereby stipulates, consents and agrees to the entry
of an Order of Preliminary Injunction, as set forth below,
without admitting or denying the allegations contained in plain-
tiff Commission's Complaint.

I.

Defendant Worden, and his officers, agents, employees, ser-
vants, attorneys, corporations or other entities under his
control, and those persons in active concert or participation
with him who receive actual notice of this Order by personal
service via facsimile or otherwise, shall be, and hereby are,
preliminarily enjoined from, directly or indirectly, singly or in
concert, violating Section 17(a) of the Securities Act of 1933
[15 U.S.C. § 77q(a)], in the offer or sale of securities, by
making use of any means or instruments of transportation or
communication in interstate commerce or by use of the mails,

directly or indirectly, by:

(1)  employing any device, scheme or artifice to defraud; or

(2)  obtaining money or property by means of any untrue
     statement of a material fact or any omission to state a
     material fact necessary in order to make the statements
     made, in the light of the circumstances under which
     they were made, not misleading; or

(3)  engaging in any transaction, practice, or course of
     business which operates or would operate as a fraud or
     deceit upon the purchaser.

## II.

Defendant Worden and his officers, agents, employees,
servants, attorneys, corporations or other entities under his
control, and those persons in active concert or participation
with him, who receive actual notice of this Order by personal
service via facsimile or otherwise, shall be, and hereby, are
preliminarily enjoined from, directly or indirectly, singly or in
concert, by the use of any means or instrumentalities of
interstate commerce, or of the mails, or the facilities of any
national securities exchange:

(1)  employing any device, scheme or artifice to defraud;

(2)  making any untrue statement of material fact or
     omitting to state a material fact necessary in order to
     make the statements made, in the light of the
     circumstances under which they were made, not
     misleading; or

2

(3)   engaging in any act, transaction, practice or course of
      business which operates or would operate as a fraud or
      deceit upon any person,

in connection with the purchase or sale of any security in
violation of Section 10(b) of the Exchange Act, [15 U.S.C.
78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5].

### III.

Defendant Worden and his officers, agents, employees,
servants, attorneys, corporations or other entities under his
control, and those persons in active concert or participation
with him, who receive actual notice of this Order by personal
service via facsimile or otherwise, shall be, and hereby, are
preliminarily enjoined from, directly or indirectly, singly or in
concert, violating Section 7(f) of the Exchange Act [15 U.S.C.
78g(f)] and Regulation X [12 C.F.R. §224] promulgated by the
Board of Governors of the Federal Reserve System ("Federal
Reserve Board"), by wilfully obtaining, receiving or enjoying the
beneficial use of a loan or other extension of credit from any
lender for the purpose of purchasing or carrying securities in
contravention of Regulations G, T, and U promulgated by the
Federal Reserve Board.

### IV.

Defendant Worden, his officers, agents, employees, servants,
attorneys, corporations or other entities under his control, and
those persons in active concert or participation with him, who
receive actual notice of this Order by personal service via

3

facsimile or otherwise, shall be, and hereby, are preliminarily enjoined from, except by further Order of this Court:

(a) transferring, pledging, assigning, dissipating, concealing or otherwise disposing of any assets, funds, securities or other property presently held or owned by them (except Worden's ordinary living expenses of $2600 per month and ordinary business expenses of $900 per month and attorney's fees incurred in connection with this action or, by consent of the Commission or upon application under seal to this Court, in related actions. Any documentation and papers provided in support of this showing will not be argued by plaintiff Commission as a waiver of any legal privileges); and

(b) destroying, mutilating, concealing, altering or disposing of any documents or materials, including but not limited to any books, records, contracts, agreements, assignments, obligations, or other property of the defendant herein.

### V.

In connection with Worden's ordinary living expenses described in Paragraph IV above, Worden shall provide the Commission, by no later than three business days following the end of each month (commencing with March 1990), a statement describing the amount of all funds withdrawn, the date of each withdrawal, and the institution from which the funds were withdrawn. This statement shall be sent to David Barnett, U.S.

4

Securities and Exchange Commission, 75 Park Place, 14th Floor,

New York, New York 10007.

Andrew B. Worden


DATED:   March    , 1990
         New York, New York

5

| From: | Matt Samuel [mcs@barronpartners.com] |
|---|---|
| Sent: | Tuesday, June 13, 2006 5:08 PM |
| To: | Robert Trumpy |
| Cc: | Henry Warner |
| Subject: | Barron Due Diligence |

Attachments: Form DOB v3.doc; Form MDR.xls; Form MDR - Part I.doc; Form MDR - Part II.doc

Rob,

Thanks for sending over the letter of intent. I have attached our standard due diligence package, including our directors background forms. Please take a look at this package, and begin streaming over the information as soon as possible. Please send all information to the email addresses in the package. Could you also please send me any financial information you have on the products that will be spun into Newco? Thanks again for your help, we are really excited about this opportunity.

Regards,
Matthew C T Samuel
Junior Analyst
Barron Partners LP
730 Fifth Avenue, 25th Floor
New York, NY 10019
tel: 212-359-0205
fax: 212-359-0222
mcs@barronpartners.com
www.barronpartners.com

The information contained in this communication may be confidential, is intended only for the use of the recipient named above, and may be legally privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender and delete the original message and any copy of it from your computer system. Thank you.

EXHIBIT 5

page 1

## Form DOB: Director / Officer Background

**INTRODUCTION:** Barron Partners conducts background and reference checks on all key officers and directors of its investment candidates. All information you submit is contained behind secured networks and is only accessible by a limited number of employees who have specific access rights to such systems. The computer that stores these records is kept on site in a secure environment, behind locked doors. In the even that Barron terminates the transaction being contemplated, your file is destroyed. None of your personal information is shared with any third parties.

**INSTRUCTIONS:** This form should be opened and completed in MS-Word. Upon completion please email the file to SECURE@BARRONPARTNERS.COM. If you choose to password protect the file please fax the password to (917) 591-7787. You must fax the signature page to (917) 591-7787. We can not conduct the background or reference checks until we receive the signature page.

## HANDWRITTEN, FAXED OR SCANNED COPIES WILL NOT BE ACCEPTED.

## LEAVE NO ITEMS BLANK. ALL INFORMATION IS REQUIRED. YOU MUST ANSWER "YES" or "NO" or indicate "NONE" wherever required.

**NOTICE:** FAILURE TO PROVIDE MATERIAL BACKGROUND INFORMATION AS REQUIRED BY THIS FORM OR THE WILLFUL OR FRAUDULENT SUBMITTAL OF A FALSE STATEMENT IN RESPONSE TO ANY SECTION MAY RESULT IN THE TERMINATION OF ANY TRANSACTIONS BEING CONTEMPLATED IN ASSOCIATION WITH THE DUE DILIGENCE EFFORTS BEING CONDUCTED HEREIN.

### SECTION 1 - Identification Information

First Name:
Middle Name (s):
Last Name:
Previous Name (Complete Name):
Primary Telephone #:
Alternate Telephone #:
Email Address:
Social Security Number:
Are you a U.S. citizen?
Visa or Work Permit Status: (Fax copy to (917) 591-7787 or scan and email to SECURE@BARRONPARTNERS.COM)
Driver's License (State Issued and Number):
Previous Driver's License (if held current license less than five years):
Date of Birth:
Place of Birth (City and State, or City and Country):
Marital Status: Single, Married, or Divorced?
Spouse's Complete Name:
Spouse's Date of Birth:
How long married?
If divorced, when?
How many children?

### SECTION 2 - Residential Addresses and Other Addresses

Beginning with your current residential address, list in reverse chronological order each residential address (U.S. and international), showing the name to who the property is title and indicating the dates you resided at each address. Leave no cells blank, if you do not remember, write "DNR". Provide as much information as possible.

|    | Address (#, street, city, state, zip code): | Titled to (full name): | Fr. (MM/YY): | To (MM/YY): |
|----|---------------------------------------------|------------------------|--------------|-------------|
| 1  |                                             |                        |              |             |
| 2  |                                             |                        |              |             |
| 3  |                                             |                        |              |             |
| 4  |                                             |                        |              |             |
| 5  |                                             |                        |              |             |
| 6  |                                             |                        |              |             |
| 7  |                                             |                        |              |             |
| 8  |                                             |                        |              |             |
| 9  |                                             |                        |              |             |
| 10 |                                             |                        |              |             |

CONFIDENTIAL

EXHIBIT 5                    page 2

In a separate list, show in reverse chronological order any other addresses (vacation homes, investment properties, or second or shared homes) indicating the dates you owned or had an interest in these properties. Leave no cells blank, if you do not remember, write "DNR".

| | Address (#, street, city, state, zip code): | Titled to (full name): | Fr. (MM/YY): | To (MM/YY): |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |

List any other states or countries where you have resided or worked on a full-time basis for over six weeks:

| | Additional States and Countries | Duration of Stay |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |

## SECTION 3 - Mailing Addresses

Beginning with your current mailing address, list in reverse chronological order each mailing address that differs from your residential address history provided in Section 2. Indicate the dates you received mail at each address. Leave no cells blank, if you do not remember, write "DNR".

| | Mailing Address (#, street (or box #), city, state, zip code): | Fr. (MM/YY): | To (MM/YY): |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

## SECTION 4 - Employment, Business and Investment History with References

Beginning with your current employer, business, or investment entity, show in reverse chronological order all your past employer/entities, including all entities which you are/were a director, a primary or majority shareholder or founder of, ventures or projects which you advised, directed, or had any other non-employee relationship. Leave no items blank.

1. from __ (MM/YY) to __ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business? If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number. In what capacity did these people work? What was their relation to you?

Continued next page_

1. from ___ (MM/YY) to ___ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business?  If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number.  In what capacity did these people work?  What was their relation to you?

1. from ___ (MM/YY) to ___ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business?  If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number.  In what capacity did these people work?  What was their relation to you?

1. from ___ (MM/YY) to ___ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business?  If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number.  In what capacity did these people work?  What was their relation to you?

1. from __ (MM/YY) to __ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business?  If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number.  In what capacity did these people work?  What was their relation to you?

1. from __ (MM/YY) to __ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business?  If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number.  In what capacity did these people work?  What was their relation to you?

1. from __ (MM/YY) to __ (MM/YY)
2. Business Name:
3. Corporate Name (if different):
4. Other names under which does business:
5. State of Incorporation:
6. Is the Company still in business?  If not, please explain.
7. Headquarters Address:
8. Website Address:
9. Address where you worked:
10. Main Phone:
11. Other Phone:
12. Your title and all positions held:
13. Your ownership %:
14. Your salary plus bonus:
15. Describe your responsibilities, ownership and the reason you left the firm.
16. Provide two references from this employer/entity including name, title, current position and place of employment, phone number and alternate phone number.  In what capacity did these people work?  What was their relation to you?

**Section 5 - Additional Reference History**

Please provide additional references so that you have a total of at least ten (10) references including those given in Section 4. Please verify all contact numbers.

| #: | Additional Reference: | Relation/Capacity: | | Current Phone: | Other Phone: |
|----|----------------------|--------------------|--|----------------|--------------|
| 1  |                      |                    |  |                |              |
| 2  |                      |                    |  |                |              |
| 3  |                      |                    |  |                |              |
| 4  |                      |                    |  |                |              |
| 5  |                      |                    |  |                |              |
| 6  |                      |                    |  |                |              |

## Section 6 - Licenses, Affiliations and Certifications

In reverse chronological order, list any and all licenses (including securities licenses), affiliations, or professional certifications as well as any trade, civic and nonprofit organizations with which you have had any association, past or present. Indicate the period of your activity and your title, role, or service capacity. Also list any special certifications you have received. Please provide a phone number if at all possible. Also provide a copy of the affiliation or certification if possible by fax to (917) 591-7787.

| License/Cert./Title | Name of Org./Board/Exchange | Complete Address: | Phone: | Dates: |
|---------------------|------------------------------|-------------------|--------|--------|
|                     |                              |                   |        |        |
|                     |                              |                   |        |        |
|                     |                              |                   |        |        |
|                     |                              |                   |        |        |

## Section 7 - Education

List the complete name of each institution and school you attended from doctorate and graduate level, to undergraduate and other college level institutions. Indicate the period you attended and the degree awarded if any. In addition, provide the address of each institution and, if possible, a telephone number. If your degree was earned outside of the U.S. please provide a copy of the diploma or transcript to document your degree by fax to (917) 591-7787. If a degree was not awarded, indicate "Not Awarded".

| Degree Awarded | Name of School | Address: | Phone: | Student ID # | Dates: |
|----------------|----------------|----------|--------|--------------|--------|
|                |                |          |        |              |        |
|                |                |          |        |              |        |
|                |                |          |        |              |        |
|                |                |          |        |              |        |

## Section 8 - Litigation, Censure, Sanctions

Provide complete detail of any litigation, civil or criminal; past, present, or pending; settled or unsettled; resolved or unresolved in any jurisdiction indicating the status of such cases, any censure or sanctions you have received or license revocation from any professional group or licensing authority. Indicate all relevant details including names of all parties, attorneys for both sides, time of action, court, case number, jurisdiction, and reason for such action. Please make sure to include any personal or business legal proceedings or bankruptcy proceedings in which you have been or may have been named. IF NONE, YOU MUST WRITE "NONE".

## Section 9 - Employment, Business, and Investment Criminal History

To your knowledge has any business organization, its officers, directors or general partners of which you are/were an officer, director or general partner or in which you have or had a controlling interest (for these purposes, defined as owning a larger percentage than any other shareholder) been the subject of a criminal investigation or prosecution in any jurisdiction (whether or not convicted of a crime) during the period of and five years following your employment, investment or affiliation? If so, indicate all relevant details including whether you were personally convicted, names of all legal representatives, time of action, court, case number, jurisdiction, and reason for such action. IF NONE, YOU MUST WRITE "NONE".

## Section 10 - Personal Criminal History

Have you ever been charged or convicted of any crime in any jurisdiction other than in response to Section 9? If so, indicate all relevant details including names of all legal representatives, time of action, court, case number, jurisdiction, and reason for such action. IF NONE, YOU MUST WRITE "NONE".

To your knowledge are you or any other executive, director or general partner of your current employer/entity the subject of any indictment, warrant, arrest, questioning, hearing or judgment including civil arrest warrants in any jurisdiction?  If so, indicate all relevant details including court, judge, attorney, agency, offense, jurisdiction, time of action, reason for such action and any other relevant details.  IF NONE, YOU MUST WRITE "NONE".

## Section 12 - Employment, Business, and Investment Bankruptcy Record

To your knowledge has any business organization of which you are/were an officer, director or general partner or in which you have or had a controlling interest (for these purposes, defined as owning a larger percentage than any other shareholder) filed a petition of bankruptcy or been adjudged a bankrupt or made an assignment for the benefit of creditors in any jurisdiction during the period of and five years following your employment, investment or affiliation?  If so, please explain and provide all relevant details including names of all legal representatives, time of action, court, case number, jurisdiction, and reason for such action.  IF NONE, YOU MUST WRITE "NONE".

## Section 13 - Employment, Business, and Investment Investigation History

Has any business organization of which you are/were an officer, director or general partner or in which you have or had a controlling interest (for these purposes, defined as owning a larger percentage than any other shareholder) been subject to any investigation by, or been a party to any litigation with, any international, federal, state or local agency in any jurisdiction during the period of and five years following your employment, investment or affiliation?  If so, indicate all relevant details including names of all legal representatives, time of action, court, case number, jurisdiction, and reason for such action.  IF NONE, YOU MUST WRITE "NONE".

## Section 14 - Employer and Business Unsatisfied Judgments and Liens including Tax Liens

Is any business organization of which you are/were an officer, director or general partner or in which you have or had a controlling interest (for these purposes, defined as owning a larger percentage than any other shareholder) now in default on any obligation to, or subject to any unsatisfied judgment or lien obtained by any party, public or private, federal, state or local taxing authority in any jurisdiction during the period of and five years following your employment, investment or affiliation?  If so, explain, listing all unsatisfied judgments or liens.  IF NONE, YOU MUST WRITE "NONE".

## Section 15 - Personal Unsatisfied Judgments and Liens including Tax Liens

Are you, your personal property, personal corporation, trust or foundation now in default on any obligation to, or subject to any unsatisfied judgment or lien obtained by any party, public or private, federal, state or local taxing authority in any jurisdiction?  If so, explain, listing all unsatisfied judgments or liens.  IF NONE, YOU MUST WRITE "NONE".

PLEASE TAKE TIME TO REVIEW YOUR ANSWERS MAKING SURE YOU COMPLETED EACH SECTION AND CHECKING TO MAKE SURE YOUR REFERENCE CONTACT INFORMATION IS STILL VALID.

PLEASE EMAIL THIS COMPLETED FORM TO SECURE@BARRONPARTNERS.COM

Continued next page...

CONFIDENTIAL    **EXHIBIT 5**

I, _____, state that I have read and understand all the items contained in the foregoing pages of this questionnaire; that I supplied full and complete answers to each item therein to the best of my knowledge, information and belief; that I will notify Barron Partners LP in writing of any change in circumstances occurring after the submission of this questionnaire and before the execution of any contract with Barron Partners LP; and that all information supplied by me is true to the best of my knowledge, information and belief. I understand that Barron Partners LP will rely on the information supplied in this questionnaire as additional inducement when considering entering into a contract with the submitting individual or business entity. Furthermore, I understand and authorize Barron Partners LP and Eos Funds Limited to conduct a background investigation including but not limited to a criminal background check in any jurisdiction, civil case history, residence, employment and degree verification, as well as to seek and contact any references, including but not limited to references provided therein.

_____
Name of submitting business

by

_____
Print Name, Title

_____
Signature

_____
Date

# PLEASE COMPLETE AND FAX A SIGNED COPY OF THIS PAGE TO

# (917) 591-7787

CONFIDENTIAL

**EXHIBIT 5**